**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LISA L. GARY, | ) |
| | ) 2:19-cv-01288 |
| Plaintiff, | ) |
| | ) |
| vs. | ) Judge Robert J. Colville |
| | ) |
| HLADIK ONORATO & FEDERMAN, LLP | ) |
| and PARTNERS FOR PAYMENT RELIEF | ) |
| DE VII, LLC, | ) |
| | ) |
| Defendants, | ) |

**MEMORANDUM OPINION**

Robert J. Colville, United States District Court Judge.

Before the Court is Defendants' Motion to Dismiss (ECF No. 6). Defendants Hladik Onorato & Federman, LLP ("HOF") and Partners for Payment Relief De VII, LLC ("PPR4"), (collectively, "Defendants"), request that the Court dismiss the Complaint of Plaintiff Lisa L. Gary ("Gary") in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6), asserting that Gary fails to state a claim upon which relief can be granted.

This matter was removed from the Court of Common Pleas of Allegheny County, Pennsylvania to this Court on the basis of federal question jurisdiction on October 8, 2019. 28 U.S.C. § 1441; 28 U.S.C. § 1331; 28 U.S.C. § 1367. Jurisdiction is proper here under the Fair Debt Collection Practices Act because this action was filed within one year of when the alleged actionable conduct occurred. *See generally* 15 U.S.C. § 1692k(d) ("An action to enforce any liability created by this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from the date on which the violation occurs."). At issue are the alleged practices and

procedures of Defendants with respect to collection of a debt from Gary. Gary asserts that Defendants, in attempting to collect a debt from Gary, have violated: 1) the Fair Debt Collection Practices Act ("FDCPA") (15 U.S.C. §§ 1692 et seq.), 2) the Pennsylvania Consumer Discount Company Act ("CDCA") (7 P.S. 6201 et seq.), 3) the Pennsylvania Fair Credit Extension Uniformity Act ("FCEUA") (73 P.S. §§ 2270.1 et seq.), 4) the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") (73 P.S. § 201-1), and 5) the Pennsylvania Loan Interest Protection Law ("LIPL") (41 P.S. § 101 et seq.). Gary seeks relief under the FDCPA (Count I), the FCEUA and UTPCPL (Count II), and the LIPL (Count III). Defendants argue that Gary lacks standing to bring her FDCPA claim, that Gary's FCEUA and UTPCPL claims fail because they rely on Gary's FDCPA claim, and that Gary cannot demonstrate harm or damages with respect to her LIPL claim.

## I.  Factual Background

Gary alleges as follows in her Complaint:

On or about June 9, 2000, Gary executed a Home Equity Line of Credit Agreement ("HELOC") with Irwin Union Bank and Trust Company ("Irwin"), an Indiana bank insured by the Federal Deposit Insurance Corporation ("FDIC"). ECF No. 1 Ex. A at ¶ 7.[1] The HELOC authorized Gary to borrow up to $11,000.00 with a variable interest rate, and the balance was secured by a third-position lien, i.e. a mortgage, on Gary's home. Compl. ¶ 8. This mortgage is recorded in Book 19908, Page 184, Instrument No. 104784 in the Office of the Recorder of Deeds of Allegheny County, Pennsylvania. Compl. Ex. C at ¶ 4.

On September 18, 2009, Irwin was closed by the Indiana Department of Financial Institutions and entered FDIC receivership. Compl. ¶ 9. Irwin Financial Corporation, Irwin's

---

[1] Gary's Complaint is attached as Exhibit A to Defendants' Notice of Removal (ECF No. 1). For ease of reference, the Court shall refer to Gary's Complaint as "Compl." hereinafter.

parent company, filed for Chapter 7 bankruptcy the same day. *Id.* at ¶ 10. Gary avers that the FDIC sold Irwin's assets, including her HELOC, to another Indiana bank: First Financial Bank, N.A. following Irwin's 2009 closure. *Id.* at ¶ 11. Gary further avers that she does not know what happened to the ownership status of the HELOC following the sale of Irwin's assets to First Financial Bank, N.A. Compl. ¶ 12. Gary stopped making HELOC payments in 2013 due to difficult financial circumstances. *Id*. at ¶ 16.

In December 2017, Real Time Resolutions, Inc. ("RealTime") contacted Gary to request HELOC payments. Compl. ¶ 21. RealTime did not disclose, and Gary did not ask, whether RealTime had purchased Gary's HELOC, or whether it was merely a servicer of the HELOC on another owner's behalf. *Id*. at ¶¶ 22, 24. Gary resumed making HELOC payments following this communication, and, because she was unable to work at the time due to illness, borrowed money to make payments to RealTime over the next several months. Compl. ¶¶ 23, 25. In Fall 2018, RealTime terminated its communication with Gary. Gary believes that this occurred because the ownership of her HELOC had once again changed hands. *Id*. at ¶ 26.

In January 2019, SN Servicing Corporation contacted Gary's adult daughter on behalf of PPR4 and requested information regarding Gary's debt. Compl. ¶ 27. On May 3, 2019, an unknown person or entity recorded a mortgage assignment purporting to transfer ownership of the HELOC from Irwin to PPR4. *Id*. at ¶ 26; Compl. Ex. B. PPR4 was formed in Delaware on July 21, 2014. Compl. ¶ 18. PPR4 was founded to collect delinquent consumer mortgage debt. *Id.* at ¶ 19. Gary asserts that PPR4, to date, has never obtained a license pursuant to the CDCA.[2] Gary

---

[2] The CDCA requires lenders of monies in the amount of $25,000.00 or less to obtain a license before they may charge "interest, discount, bonus, fees, fines, commissions, charges, or other considerations which aggregate in excess of the interest that the lender would otherwise be permitted by law to charge if not licensed." 7 P.S. § 6203(A). LIPL Section 201 states that the maximum lawful interest rate for a loan of less than $50,000.00 is six percent. 41 P.S. § 201(a).

3

further asserts that, at all times material to Gary's claims, HOF acted as an agent on behalf of PPR4. *Id.* at ¶ 6. On June 17, 2019, HOF, on behalf of PPR4, filed a Complaint in Mortgage Foreclosure in the Allegheny County Court of Common Pleas against Gary seeking to recover a total of $15,387.37, i.e. the outstanding principal, interest at a rate of 14.9%, and late charges due on the HELOC at that time. Compl. ¶¶ 31–32; Compl. Ex. C at ¶¶ 1–11.

On September 16, 2019, Gary filed a three-count Complaint in the Court of Common Pleas of Allegheny County, Pennsylvania against HOF and PPR4, and the matter was subsequently removed to this Court. Defendants filed their Motion to Dismiss Gary's Complaint on October 29, 2019. The matter is now ripe.

**II.     Legal Standard**

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining on whether the plaintiff will likely prevail on the merits; rather, when considering a motion to dismiss, the court accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002). While a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, a complaint must provide more than labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007)). "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Supreme Court of the United States has explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* (quoting *Twombly*, 550 U.S. at 556) (internal citations omitted).

The United States Court of Appeals for the Third Circuit instructs that "a court reviewing the sufficiency of a complaint must take three steps." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). The court explained:

> First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. S*ee also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth."). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

*Connelly*, 809 F.3d at 787. "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (internal citations omitted).

In addition to reviewing the facts set forth in the complaint, a court may consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994). When a document integral to or relied upon in the complaint is included, the court may also consider that document. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

### III. Discussion

#### A. Gary's FDCPA Claim (Count I)

Count I of Gary's Complaint seeks relief under the FDCPA. The purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). FDCPA § 1692e prohibits any "false, deceptive, or misleading representation or means in connection with the collection of any debt." Prohibited actions include:

> (2) The false representation of--
>
>   (A) the character, amount, or legal status of any debt; or
>
>   . . . .
>
>  (5) The threat to take any action that cannot legally be taken or that is not intended to be taken.
>
>   . . . .
>
>  (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. § 1692e. FDCPA § 1692f prohibits the use of "unfair or unconscionable means to collect or attempt to collect any debt." Such prohibited conduct includes but is not limited to "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f.

In order to state a claim for a violation of the FDCPA, a plaintiff must set forth allegations which establish that a debt collector utilized one or more prohibited practices to collect a debt from a consumer. *Piper v. Portnoff Law Assocs., Ltd.*, 396 F.3d 227, 232 (3d Cir. 2005). In the present

case, Gary asserts that Defendants utilized prohibited practices in order to collect a debt from Gary, specifically that: 1) Defendants knowingly misrepresented that PPR4 is the owner of the HELOC by way of an assignment of mortgage from Irwin to PPR4; and 2) Defendants represented in their Complaint in Mortgage Foreclosure that they are entitled to collect 14.9% interest from Gary, despite the fact that neither Defendant possesses the requisite license under the CDCA to collect such interest.

Defendants argue that Gary lacks standing to challenge the May 3, 2019 assignment of mortgage between Irwin and PPR4, and that Gary's claim asserting that this assignment was fraudulent fails as a matter of law. Defendants further argue that Gary's claim regarding Defendants' attempt to collect 14.9% interest fails as a matter of law because Gary lacks standing to assert a violation of the CDCA. Finally, Defendants assert that Gary's FDCPA claim fails as a matter of law because Gary has not sufficiently pled that Defendants are subject to the licensing requirements of the CDCA.

### 1) Standing (FDCPA)

There are three requirements for standing under Article III of the United States Constitution: 1) injury-in-fact, 2) causation, and 3) redressability. *See generally*, U.S. CONST. art. III, § 2; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

In the instant case, Gary asserts that Defendants violated the FDCPA by recording a false mortgage assignment purportedly transferring ownership of the HELOC from Irwin to PPR4. Gary asserts that PPR4, or an agent on PPR4's behalf, knowingly and intentionally obtained a blank, previously notarized assignment form and entered PPR4's name onto a blank space to create an assignment from Irwin to PPR4.[3] Compl. ¶ 55. Gary avers that such an assignment could not

---

[3] Ex. B to Pl.'s Complaint is the assignment of mortgage at issue. The Court notes that the document shows Irwin as the assignor and PPR4, typed on what appears to have been a blank space on a form document, as the assignee.

have occurred because Irwin had shut down its operations five years prior to PPR4's formation. *See* Compl. ¶¶ 9, 10, 19, 29. Gary further alleges that Defendants utilized this purportedly fraudulent assignment in connection with the collection of a debt from Gary, namely the filing of a mortgage foreclosure action against Gary in the Court of Common Pleas of Allegheny County (the "foreclosure action"). Gary avers that such actions constitute violations of both § 1692e and § 1692f of the FDCPA.

Third Circuit courts have consistently held that a mortgagor lacks standing to challenge an assignment of mortgage because the mortgagor is neither a party nor a third-party beneficiary to the assignment, and thus cannot set forth an injury with respect to a fraudulent assignment. In *Souders v. Bank of Am.*, No. 1:CV-12-1074, 2012 WL 7009007, at *1, *10 (M.D. Pa. Dec. 6, 2012), a plaintiff challenged the validity of a mortgage assignment in asserting a violation of the FDCPA. The United States District Court for the Middle District of Pennsylvania explained:

> [I]t is well-established that a borrower (in this case, Plaintiff) does not have standing to challenge the validity of mortgage assignments, because, according to 6A C.J.S. Assignments § 132, "the only interest or right which an obligor or a claim has in the instrument of assignment is to insure him or herself that he or she will not have to pay the same claim twice." 6A C.J.S. Assignments § 132; *see also Ward v. Security Atl. Mortgage Elec. Registration Systems, Inc.*, 858 F.Supp.2d 561,568 (E.D.N.C.2012) ("Plaintiffs lack standing to challenge the validity of any such assignment [of mortgage]."); *see also Livonia Property Holdings, LLC v. 12840–12976 Farmington Road Holdings, LLC,* 717 F.Supp.2d 724, 735–37 (E.D.Mich.2010) ("hold[ing] that Borrower may not challenge the validity of assignments to which it was not a party or third-party beneficiary, where it has not been prejudiced, and the parties to the assignments do not dispute (and in fact affirm) their validity.").

*Souders v. Bank of Am.*, No. 1:CV-12-1074, 2012 WL 7009007, at *11 (M.D. Pa. Dec. 6, 2012), *report and recommendation adopted,* No. 1:12-CV-1074, 2013 WL 451863 (M.D. Pa. Feb. 6, 2013). *See also Potoczny v. Aurora Loan Servs., LLC*, 33 F. Supp. 3d 554, 566 n. 18 (E.D. Pa. 2014) (citing *In re Walker*, 466 B.R. 271, 285-86 (Bankr. E.D. Pa. 2012)) ("Because any payments

made to the holder of the note will discharge a debtor's liability under the note, the debtor cannot be harmed by paying the holder, even if the holder failed to comply with certain transfer requirements."); *Dixon v. Stern & Eisenberg, PC*, No. 5:14-CV-4551, 2015 WL 3833782, at *11 (E.D. Pa. June 22, 2015), *aff'd sub nom. Dixon v. Stern & Eisenburg, PC*, 652 F. App'x 128 (3d Cir. 2016) ("Plaintiff alleges that Defendants violated the FDCPA by causing two fraudulent Assignments of Mortgage to be recorded in the Berks County Recorder of Deeds. . . . Initially it is determined that Plaintiff lacks standing to contest the validity of the Assignment of Mortgage from Option One/Sand Canyon to Wells Fargo."); *English v. Fed. Nat. Mortg. Ass'n*, No. CIV.A. 13-2028 (CCC), 2013 WL 6188572, at *4 (D.N.J. Nov. 26, 2013) ("In the context of a mortgage assignment, case law has held that a mortgagor, or borrower, does not have standing to allege that an assignment between two third parties is invalid.").

In holding that a plaintiff failed to set forth the type of injury that may support FDCPA standing on the part of a mortgagor challenging an assignment of mortgage, the Third Circuit Court of Appeals explained:

> [Plaintiff] does not state or offer any evidence that he has attempted to send mortgage payments that he owes to some other entity, that he was confused about how to cure a default, or that he risked (or feared that he risked) the prospect of having to satisfy the same debt to multiple parties. *Cf. Rajamin v. Deutsche Bank Nat'l Trust Co.*, 757 F.3d 79, 85 (2d Cir. 2014) (finding lack of Article III standing to challenge an assignment when plaintiffs had "not pleaded or otherwise suggested that they ever paid defendants more than the amounts due [on their note], or that they ever received a bill or demand from any entity other than defendants," or that there was "any threat or institution of foreclosure proceedings ... by any entity other than defendants").

*Dixon v. Stern & Eisenburg, PC*, 652 F. App'x 128, 131–32 (3d Cir. 2016).

In an attempt to distinguish the case law discussed above, Gary argues that the HELOC is a nonnegotiable instrument and, because mere possession of a nonnegotiable instrument is insufficient to establish ownership, the HELOC's chain of ownership is thus at issue. In *Potoczny*

9

*v. Aurora Loan Servs., LLC*, a plaintiff asserted violations of the same FDCPA sections presently at issue against a defendant who had obtained possession of a note secured by a mortgage and had filed a foreclosure action. In holding that such a note was a negotiable instrument, the United States District Court for the Eastern District of Pennsylvania explained that:

> Although the Pennsylvania Supreme Court has not yet addressed this issue head on, both the Pennsylvania Superior Court and the Bankruptcy Court for the Eastern District of Pennsylvania have held that a note securing a mortgage *is a negotiable instrument* under Pennsylvania's Uniform Commercial Code ("PUCC"), enforceable by its possessor, *regardless of doubts about the chain of possession or the status of the possessor as a 'holder' of the note under the UCC.*

*Potoczny v. Aurora Loan Servs., LLC*, 33 F. Supp. 3d 554, 565 (E.D. Pa. 2014) (emphasis added). *See also Dixon v. Stern & Eisenberg, PC,* No. 5:14-CV-4551, 2015 WL 3833782, at *10 (E.D. Pa. June 22, 2015), *aff'd sub nom. Dixon v. Stern & Eisenburg, PC*, 652 F. App'x 128 (3d Cir. 2016) ("Defendants are also correct that 'Mortgage Notes ... are negotiable instruments governed by article 3 of the UCC.'"). Gary has not explained how the mortgage associated with the HELOC is in some way distinguishable from the mortgages discussed in *Potoczny* and *Dixon*. Accordingly, the HELOC constitutes a negotiable instrument.

Further, Gary does not allege that she is either a party to the assignment of mortgage at issue or a third-party beneficiary of the assignment. Gary does not allege that she has attempted to make mortgage payments to some entity other than Defendants since Defendants' acquisition of the HELOC, that some other entity has demanded payment from Gary in the time since Defendants purportedly acquired the HELOC, or that there was a threat of foreclosure by any entity other than Defendants. The assignment of mortgage from Irwin to PPR4 attached to Gary's Complaint establishes, and Gary pleads no facts to challenge, that Defendants are the holders of the mortgage associated with the HELOC. Accordingly, Gary's FDCPA claim asserting that Defendants knowingly misrepresented that PPR4 was the owner of the HELOC, and thus entitled

to foreclose on the HELOC, by way of an assignment of mortgage from Irwin to PPR4 fails to set forth an injury-in-fact.  *See Potoczny v. Aurora Loan Servs., LLC*, 33 F. Supp. 3d 554, 566 n. 18 (E.D. Pa. 2014) (citing *In re Walker*, 466 B.R. 271, 285-86 (Bankr. E.D. Pa. 2012)) ("Because any payments made to the holder of the note will discharge a debtor's liability under the note, the debtor cannot be harmed by paying the holder, even if the holder failed to comply with certain transfer requirements.").  In light of the above, Gary would not be able to maintain a claim before this Court for a violation of the FDCPA if Gary's Complaint relied only on her allegations involving the allegedly fraudulent assignment of mortgage.

Gary has also alleged, however, that Defendants filed a mortgage foreclosure action in the Court of Common Pleas of Allegheny County wherein they seek recovery of interest at a rate of 14.9%.  Gary further alleges that neither Defendant possesses a license under the CDCA.  The CDCA requires lenders of monies in the amount of $25,000.00 or less to obtain a license before they may charge "interest . . . in excess of the interest that the lender would otherwise be permitted by law to charge if not licensed."  7 P.S. § 6203(A).  LIPL Section 201 provides that the maximum lawful interest rate for a loan of less than $50,000.00 is 6%, absent the applicability of an exception such as a license under the CDCA.  41 P.S. § 201(a); 41 P.S. § 604.  Accordingly, if Defendants are not appropriately licensed under the CDCA, they are not entitled to the 14.9% interest they seek by way of the foreclosure action.  Gary's allegations regarding the interest sought in the foreclosure action sufficiently set forth a false representation on Defendants' part respecting the character, amount, or legal status of a debt in connection with an attempt to collect that debt.  A debt collector who is found to have violated the FDCPA is liable for actual damages, fees and costs, as well as "such additional damages as the court may allow, but not exceeding $1,000."  15

U.S.C.A. § 1692k(a). Accordingly, Count I sufficiently sets forth a violation of the FDCPA and Gary has standing to assert such a violation.

### 2) CDCA Standing

Defendants' also argue that, because the CDCA does not provide for a private cause of action, Gary lacks standing to bring a claim for a violation of the CDCA. Gary, however, does not assert a claim under the CDCA or seek relief under the CDCA. Rather, Gary asserts a violation of the CDCA to illustrate alleged actions taken by Defendant that would also constitute false, deceptive, or misleading representations or means utilized in the collection of a debt, as well as the use of unfair or unconscionable means to collect or attempt to collect a debt. Gary does not merely assert that Defendants are unlicensed and have thus violated the CDCA by seeking interest at a rate of 14.9%. Rather, the allegations in Gary's Complaint set forth a scenario wherein Defendants have filed a public lawsuit against Gary attempting to collect interest to which they are not legally entitled. This alleged conduct may constitute a CDCA violation, but it also sets forth allegations which would independently support a finding of a FDCPA violation. Specifically, the allegations in Gary's Complaint set forth a "false representation of the character, amount, or legal status of any debt," which is prohibited by FDCPA § 1692e(2)(A). As Gary does not seek relief under the CDCA, the issue of whether Gary has standing to assert a CDCA violation is moot.

### 3) Licensing Requirements of the CDCA

Defendants further assert that Gary's FDCPA claim fails as a matter of law because Gary has not sufficiently pled that Defendants are subject to the licensing requirements of the CDCA. Section 6203 of the CDCA provides:

A. On and after the effective date of this act, no person shall engage or continue to engage in this Commonwealth, either as principal, employe, agent or broker, in the business of negotiating or making loans or advances of money on credit, in the amount or value of twenty-five thousand dollars ($25,000) or less, and charge,

12

> collect, contract for or receive interest, discount, bonus, fees, fines, commissions, charges, or other considerations which aggregate in excess of the interest that the lender would otherwise be permitted by law to charge if not licensed under this act on the amount actually loaned or advanced, or on the unpaid principal balances when the contract is payable by stated installments except a domestic business corporation organized under or existing by virtue of the Business Corporation Law of this Commonwealth, after first obtaining a license from the Secretary of Banking of the Commonwealth of Pennsylvania in accordance with the provisions of this act.
>
> B. Any person who shall hold himself out as willing or able to arrange for or negotiate such loans of twenty-five thousand dollars ($25,000), or less where the interest, discount, bonus, fees, fines, commissions or other considerations in the aggregate exceeds the interest that the lender would otherwise be permitted by law to charge or who solicits prospective borrowers of such loans of twenty-five thousand dollars ($25,000), or less shall be deemed to be engaged in the business contemplated by this act, unless otherwise permitted by law to engage in such activities.  The referring borrowers to a licensee shall not be deemed to be engaged in the business contemplated by this act if no charge, no matter how denominated, for such reference is imposed on the prospective borrower by the person making the reference.  No licensee shall knowingly include in any loan under this act any amount which is to be paid by the borrower to another as a fee or charge, no matter how denominated, for referring said borrower to the licensee.

7 P.S. § 6203 (footnote omitted).  Defendants argue that Gary's CDCA allegations are insufficient because she did not plead that Defendants are in the business of "negotiating or making loans or advances of money or credit," thus subjecting Defendants to the requirements of CDCA Section 6203(A).  Defendants further argue that Gary failed to plead that Defendants "hold themselves out as willing or able to arrange for or negotiate loans of $25,000 or less," a prerequisite under Section 6203(B).

Gary's Complaint states that "[i]n the ordinary course of business, HOF utilizes the mails and telephone in an effort to collect delinquent mortgage debt from consumers in Allegheny County, Pennsylvania on behalf of its clients."  Compl. ¶ 3.  The Complaint further alleges that PPR4's "primary business is the collection of consumer debt," and that HOF acted as agent for PPR4.  *Id*. at ¶ 5.  Gary's Complaint also explicitly states that PPR4 is "a non-bank consumer

13

lender of monies in the amount of $25,000.00 or less." Compl. ¶ 32. Accepting as true all well-pled factual allegations in the Complaint and viewing them in a light most favorable to Gary, the Court finds that Gary has sufficiently pled that Defendants are subject to the requirements of the CDCA.

### B. Gary's FCEUA and UTPCPL Claims (Count II)

Defendants argue that Gary's FCEUA and UTPCPL claims fail as a matter of law because Gary's FDCPA claim fails to state a valid claim. This is Defendants' only argument in support of dismissal of Count II. FCEUA Section 2270.4(a) states that "[i]t shall constitute an unfair or deceptive debt collection act or practice under this act if a debt collector violates any of the provisions of the Fair Debt Collection Practices Act." 73 P.S. § 2270.4(a). FCEUA Section 2270.5(a) states that "[i]f a debt collector or creditor engages in an unfair or deceptive debt collection act or practice under this act, it shall constitute a violation of the act of December 17, 1968 (P.L. 1224, No. 387), known as the Unfair Trade Practices and Consumer Protection Law." 73 P.S. § 2270.5(a). As discussed above, Gary has set forth allegations sufficient to state a claim for a violation of the FDCPA. Accordingly, the Court finds that Gary has stated a claim for violations of the FCEUA and the UTPCPL.

### C. Gary's LIPL Claim (Count III)

Count III of Gary's Complaint asserts that Defendants violated the LIPL by seeking 14.9% interest via the foreclosure action. LIPL Section 201 states that the maximum lawful interest rate for a loan of less than $50,000.00 is six percent, absent the applicability of an exception. 41 P.S. § 201(a); 41 P.S. § 604. Gary asserts that, while the CDCA provides a state-law exception for CDCA-licensed lenders of monies in the amount of $25,000.00 or less to charge more than six percent interest, neither Defendant possesses such a license. Gary further asserts that, because

Defendants are not licensed pursuant to the CDCA, Defendants are subject to LIPL's 6% interest cap, and Defendants' request for 14.9% interest in the foreclosure action is violative of LIPL.

Defendants argue that the "usury savings clause" in the HELOC Agreement forecloses liability under LIPL in this action.  The HELOC's usury savings clause states:

> If a law, which applies to this loan which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (ii) any sum already collected from me which exceed the permitted limits will be refunded to me.  The Lender may choose to make this refund by reducing the principal I owe under Agreement or by making a direct payment to me…

Def.'s Mem. in Supp. at 9.[4]  Defendants argue that, because of this clause, Gary is unable to set forth an injury with respect to her LIPL claim.  Gary asserts that the usury savings clause tends to support a finding that Defendants violated the LIPL because it provides a remedy for overcharge.

Accepting as true all well-pled factual allegations in the Complaint and viewing them in a light most favorable to Gary, and for the same reasons discussed above with respect to Gary's FDCPA claim, Gary clearly sets forth a violation of LIPL.  The Court cannot, however, find that this LIPL violation involves an injury with respect to Gary or that this violation is redressable through the instant action.  Gary's claim for a violation of LIPL hinges on Defendants' actions in "claiming" that PPR4 is entitled to collect 14.9% interest and "attempting to collect" 14.9% interest from Gary.  Compl. ¶¶ 47, 65.  Importantly, Gary's Complaint alleges that her most recent HELOC payment was made sometime in 2018 to RealTime, an entity Gary's Complaint does not name as a defendant or associate with Defendants in any way.  Compl. ¶¶ 23, 25.  Gary does not

---

[4] The Court must rely on Defendants' quotation of the usury savings clause in their Brief in Support of their Motion to Dismiss because the HELOC Agreement attached as Exhibit A to Gary's Complaint is not legible.  Gary does not quote the usury savings clause, but acknowledges its existence in her Memorandum of Law in Opposition.  *See* Pl.'s Mem. in Opp. at 11 ("[T]he savings clause goes to how Plaintiff's LIPL claim may be remedied, not as to whether Plaintiff has a LIPL claim.").  Gary does not challenge Defendants' transcription of the usury savings clause in her Memorandum in Opposition.

15

allege that she made any payment to Defendants, who seemingly first became involved with the HELOC on or around May 3, 2019, when the assignment of mortgage from Irwin to PPR4 was filed. *Id.* at ¶ 26; Compl. Ex. B.

    With respect to remedies, LIPL Section 501 provides:

> When a rate of interest for the loan or use of money, exceeding that provided by this act or otherwise by law shall have been reserved or contracted for, the borrower or debtor shall not be required to pay to the creditor the excess over such maximum interest rate and it shall be lawful for such borrower or debtor, at his option, to retain and deduct such excess from the amount of such debt providing the borrower or debtor gives notice of the asserted excess to the creditor.

41 P.S. § 501. Section 502 provides:

> A person who has paid a rate of interest for the loan or use of money at a rate in excess of that provided for by this act or otherwise by law or has paid charges prohibited or in excess of those allowed by this act or otherwise by law may recover triple the amount of such excess interest or charges in a suit at law against the person who has collected such excess interest or charges: Provided, That no action to recover such excess shall be sustained in any court of this Commonwealth unless the same shall have been commenced within four years from and after the time of such payment. Recovery of triple the amount of such excess interest or charges, but not the actual amount of such excess interest or charges, shall be limited to a four-year period of the contract.

41 P.S. § 502. Section 503(a) allows for the recovery of "the aggregate amount of costs and expenses determined by the court to have been reasonably incurred on his behalf in connection with the prosecution of such action, together with a reasonable amount for attorney's fee" should a borrower or debtor prevail on a LIPL claim. LIPL Section 504 provides that "[a]ny person affected by a violation of the act shall have the substantive right to bring an action on behalf of himself individually for damages by reason of such conduct or violation, together with costs including reasonable attorney's fees and such other relief to which such person may be entitled under law." 41 P.S. § 504.

As discussed above, Gary has not alleged that she made any payment to Defendants with respect to the HELOC.  Accordingly, Gary cannot seek a refund of charges, a refund of excess interest payments paid to Defendants, or treble damages pursuant to 41 P.S. § 502.[5]  Further, unlike the FDCPA, LIPL does not provide for the potential award of statutory damages.  *See* 15 U.S.C.A. § 1692k(a) (In an action brought by an individual, a debt collector who violates the FDCPA is liable for actual damages as well as "such additional damages as the court may allow, but not exceeding $1,000.").  Absent any allegation of an overpayment to a defendant, LIPL seemingly does not provide any redress for a borrower who is charged in excess of the allowable interest rate other than to withhold payment of excess interest.  Gary has already withheld any payment to Defendants.   For these reasons, Gary's claim for a LIPL violation before this Court fails to set forth a redressable injury.  Accordingly, the Court will grant Defendants' Motion to Dismiss with respect to Count III.

An appropriate Order of Court will follow.

BY THE COURT:

s/*Robert J. Colville*_____
Robert J. Colville
United States District Court Judge

DATED: February 21, 2020
cc/ecf: All counsel of record

---

[5] The issue of whether Gary, had she made any such payment to Defendants, could maintain a LIPL claim for treble damages in spite of the contractually agreed upon usury savings clause is not before the Court, and, accordingly, the Court shall not address it as this time.