IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LISA L. GARY,<br><br>    Plaintiff,<br><br>  vs.<br><br>HLADIK ONORATO & FEDERMAN LLP and PARTNERS FOR PAYMENT RELIEF DE IV, LLC.,<br><br>    Defendants. | CIVIL DIVISION<br><br>CASE NO. 2:19-CV-01288-RJC |

## AMENDED COMPLAINT

AND NOW comes the Plaintiff, Lisa L. Gary, by and through her attorneys, Emily Gomez-Hayes and the Law Office of Emily Gomez LLC, and makes the following Amended Complaint, asserting violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et. seq*. ("FDCPA"), the Fair Credit Extension Uniformity Act, 73 P.S. § 2270.1 *et. seq*. ("FCEUA"), and Pennsylvania's Loan Interest Protection Law, 41 P.S. § 101 *et. seq*. ("LIPL"). In support thereof, she states as follows:

### PARTIES

1. Plaintiff Lisa L. Gary ("Plaintiff"), is a natural person and resident of Allegheny County, PA. Ms. Gary is a "consumer" as defined by § 1692a(3) of the FDCPA and § 2270.3 of the FCEUA, and a "residential mortgage debtor" as defined by § 101 of the LIPL. Prior to 2019, Plaintiff allegedly incurred a financial obligation primarily for personal, family, or household purposes – a "debt" as defined by § 1692a(5) of the FDCPA and § 2270.3 of the FCEUA.

2. Defendant Hladik Onorato & Federman LLP ("HOF" or "Defendant") is a limited liability partnership and law firm located at 298 Wissahickon Ave, North Wales, PA 19454.

3. In the ordinary course of business, HOF utilizes the mails and telephone in an effort to collect delinquent mortgage debt from consumers in Allegheny County, Pennsylvania on behalf of its clients.  HOF is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692(a)(6).

4. Defendant Partners for Payment Relief DE IV, LLC ("PPR4" or "Defendant") is a Delaware limited liability company with a business address in Berwyn, PA.  Defendant's primary business is the collection of delinquent consumer debt.

5. In the ordinary course of business, PPR4 utilizes the mails and telephone in an effort to collect delinquent second and third-position mortgage debt from consumers in Allegheny County, Pennsylvania.  Defendant is a "debt collector" as defined by § 1692(a)(6) of the FDCPA, and the FCEUA, 73 P.S. § 2270.3.

6. At all times material hereto, HOF acted as an agent on behalf of PPR4.

**FACTUAL ALLEGATIONS**

7. On or about June 9, 2000, Plaintiff entered into a Home Equity Line of Credit ("HELOC") Agreement with non-party Irwin Union Bank and Trust Company ("Irwin"), a bank licensed by the state of Indiana, and insured by the FDIC.  Exhibit A.

8. The HELOC allowed Plaintiff to borrow up to $11,000.00 in various draws with a variable interest rate, and the balance was secured by a third-position lien on Plaintiff's home.

9. A home equity line of credit such as Ms. Gary's, by design, is not a loan for a fixed amount of money but rather a form of open-ended credit similar to a credit card.

10. Because HELOCs are not loans for fixed amounts of money, they do not constitute negotiable instruments as defined by Article 3 of the Uniform Commercial Code.[1]

---

[1] A negotiable instrument is "an unconditional promise or order to pay a fixed amount of money, with or without interest, if it (1) is payable to bearer or to order at the time it is issued or first comes into possession of a holder; (2) is payable on demand or at a definite time; and (3) does not state any other undertaking or instruction by the person

11. Upon entering into the HELOC, Plaintiff therefore did not borrow $11,000, or any other fixed amount.

12. Rather, Plaintiff opened a credit line and took "draws" on the HELOC when she found herself in need of funds, later repaying the draws with interest.

13. In entering the HELOC, Ms. Gary was required to notify the lender of changes in her employment status, changes in her financial condition, and of any damage that were to occur to the collateral.  Exhibit A.

14. These requirements further rendered Ms. Gary's HELOC non-negotiable, because she was required to take actions other than the mere the payment of money.  Id; see also 13 Pa.C.S. § 3104(a)(3).

15. On Friday, September 18, 2009, Irwin was closed by the Indiana Department of Financial Institutions, and entered FDIC receivership.

16. Irwin's parent company, Irwin Financial Corporation, filed for Chapter 7 bankruptcy in the Southern District of Indiana on the same day, where the case received Docket No. 09-13852.

17. On information and belief, following Irwin's 2009 closure the FDIC arranged for the sale of Irwin's assets, including Plaintiff's HELOC, to Columbus, Indiana-based bank First Financial Bank, N.A.[2]

18. It is unknown what the balance was on Plaintiff's HELOC at the time Irwin failed and had its assets sold off to First Financial.

19. Following the sale of Irwin's assets to First Financial Bank, it is unknown what happened to the ownership of Plaintiff's HELOC.

---

promising or ordering payment to do any act in addition to the payment of money." 13 Pa.C.S. § 3104(a); J.P. Morgan Chase Bank, N.A. v. Murray, 63 A.3d 1258 (Pa. Super. 2013).
[2] See Purchase and Assumption Agreement, Sept. 18, 2009, https://www.fdic.gov/bank/individual/failed/irwin-in-p-and-a.pdf

20. In 2010, Plaintiff's then-employer offered buyouts to its employees, in an effort to shrink the workforce during the down economy.

21. Plaintiff decided to accept her employer's offer, and in 2011 Plaintiff and her daughter started a small business using the buyout funds.

22. Unfortunately Plaintiff's business did not prosper, and in 2013 Plaintiff and her daughter were forced to close its doors.

23. Due to the business's failure and its related debts, Plaintiff found herself in difficult financial circumstances, and was forced to stop making payments on the Irwin HELOC.

24. Sometime thereafter, whatever entity owned the HELOC at that time stopped sending periodic statements to Plaintiff, and she has never received one since.

25. While Plaintiff was fortunate to find another job, her new job did not pay sufficiently to both allow her to meet her ordinary household expenses and enable her to resume making payments on the HELOC.

26. On or about July 21, 2014, Defendant PPR4 was formed in the State of Delaware.

27. On information and belief, Defendant was formed for the express purpose of purchasing delinquent consumer mortgage debt, and attempting to collect said debt while charging interest at rates to which original lenders were entitled, including rates in excess of 6% simple interest.

28. In March of 2015, Defendant registered its name in the Commonwealth of Pennsylvania.

29. In December of 2017, Plaintiff began receiving correspondence from a company called Real Time Resolutions, Inc. ("RealTime"), which sought payment on the Irwin HELOC.

30. In its correspondence, RealTime never specified whether it had purchased Plaintiff's HELOC, or whether it was a servicer of the HELOC on behalf of another owner.

31. At the time Plaintiff had recently been diagnosed with breast cancer, and was undergoing chemotherapy.  Due to the chemotherapy, Plaintiff was unable to work and perform basic tasks of daily living, and was temporarily staying with her adult daughter.

32. Given the state of her health, Plaintiff did not ask whether RealTime owned her HELOC, and if so, from whom RealTime had purchased it.

33. Over the next several months, Plaintiff borrowed money to make several payments to RealTime, while Plaintiff continued with chemotherapy and underwent a mastectomy.

34. In the fall of 2018, RealTime abruptly stopped corresponding with Plaintiff for unknown reasons.  On information and belief, Plaintiff's HELOC had changed hands yet again.

35. In January of 2019, Plaintiff's adult daughter received correspondence at her home from one SN Servicing Corporation, which was seeking information from Plaintiff on behalf of Defendant PPR4.

36.  On or about May 3, 2019, an unknown person or entity recorded a mortgage assignment, purporting to be from Irwin, directly to PPR4.  Exhibit B.

37. This mortgage assignment constituted a false, deceptive, and misleading statement, inasmuch as Irwin ceased to exist nearly five years before PPR4 came into being.

38. On information and belief, PPR4 or one of its agents obtained a blank and previously-notarized assignment form and filled Defendant's name in, misspelling it in the process.

39. On June 17, 2019 Defendant HOF filed a Complaint in Mortgage Foreclosure on behalf of Defendant PPR4 that sought, inter alia, the recovery of interest at a rate of 14.9% for a total of $6,164.16.  Exhibit C.

40. As a non-bank consumer lender of monies in the amount of $25,000.00 or less, Defendant PPR4 is required to obtain a license pursuant to Pennsylvania's Consumer Discount

Company Act ("CDCA"), 7 P.S. § 6201 *et. seq.*, in order to lawfully charge interest in excess of 6% simple interest.

41. Defendant has never, to date, obtained a license pursuant to the CDCA.

42. As such, Defendant is forbidden from charging more than 6% simple interest on loans pursuant to the Loan Interest Protection Law, 41 P.S. § 101 *et. seq.* ("LIPL"), Pennsylvania's usury statute.

43. Given that Defendant PPR4 is not legally permitted to charge Plaintiff interest in excess of 6%, Defendant HOF's demand in the Foreclosure Complaint for 14.9% interest totaling $6,164.16 constitutes a false, deceptive and misleading representation.

44. In paragraph 7 of the Foreclosure Complaint, Defendants also claim that PPR4 is a proper party in interest thanks to the fraudulent assignment recorded May 3, 2019.

45. As previously stated <u>infra</u>, PPR4 was never the recipient of an assignment from Irwin, inasmuch as Irwin ceased to exist almost five years before PPR4 was formed.

46. Defendants' assertion in paragraph 7 thus constitutes a false, deceptive and misleading representation, to both Plaintiff and to the Court itself.

47. As of the filing date of the instant case, Defendants continue to maintain that PPR4 was the direct recipient of an assignment from Irwin in 2019, when Irwin failed in 2009.

48. As of the filing date of the instant case, Defendants have yet to discontinue their efforts to seek 14.9% interest, to which PPR4 is not legally entitled.

49. As a direct and proximate result of Defendants' conduct, Plaintiff has expended time and energy attempting to seek loans for an amount to which Defendants are not entitled.

50. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered from anxiety, embarrassment, stress, and lost sleep.

51. As a direct and proximate result of Defendants' conduct, Plaintiff was forced to retain counsel to defend her in a foreclosure action in which Defendants sought monies to which they were not legally entitled.

### Count I – FDCPA (All Defendants)

52. The preceding paragraphs are incorporated herein by reference.

53. The foregoing acts and omissions of Defendants constituted (1) false, deceptive and misleading statements, and (2) unfair practices in violation of 15 U.S.C. §§ 1692e and 1692f of the FDCPA.

*Misrepresenting the Character and Status of a Debt: § 1692e*

54. In relevant part, § 1692e prohibits debt collectors from using:

> "[a]ny false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> ……
>
> (2) The false representation of –
>   (A) the character, amount, or legal status of any debt;
>
> ……
>
> (5) The threat to take any action that cannot legally be taken or that is not intended to be taken.
>
> …….
>
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

15 U.S.C. § 1692e.

55. In the instant matter, Defendants' actions violated §§ 1692e, 1692e(2), 1692e(5), and 1692e(10).

56. Defendants ran afoul of the foregoing provisions in two respects: (1) proclaiming that PPR4 was entitled to foreclose on Plaintiff thanks to an assignment from Irwin Union Bank and Trust, and (2) claiming PPR4 was entitled to collect 14.9% interest from Plaintiff, for a sum of $6,164.16, when PPR4 lacked a CDCA license.

57. Such violations constituted false representations of the amount of a debt, false statements in connection with the collection of a debt, and threats to take action that cannot legally be taken.

58. As a result of Defendants' actions, Plaintiff has suffered such harm as has previously been stated herein.

### *Unfair or Unconscionable Means: § 1692f*

59. In relevant part, § 1692f prohibits debt collectors from engaging in:

> "[u]nfair or unconscionable means to collect or attempt to collect a debt.

15 U.S.C. § 1692f.

60. Merriam-Webster's Collegiate Dictionary defines unfair as:

> "[M]arked by injustice, partiality, or deception."

Merriam-Webster's Collegiate Dictionary, 11th Ed. 2012.

61. In the instant matter, Defendants' actions constituted unfair conduct in violation of §1692f because critical representations made by Defendants to Plaintiff, to the court, and to the general public contained material falsehoods.

62. Defendants falsely represented to the general public and to the Court itself that PPR4 was the direct recipient of an assignment from Irwin Union Bank and Trust, and as such had the right to foreclose on Plaintiff's HELOC.

63. Unfortunately, Irwin ceased to exist almost five years before PPR4 was formed.

64. PPR4 (or its agent) filed this assignment knowingly, as a person had to intentionally add typed text onto a blank, notarized form in order to create the "assignment." See Exhibit B.

65. Defendants HOF and PPR4 also falsely represented to the general public and to the Court itself that PPR4 was entitled to claim 14.9% interest when it was not.

66. As a result of Defendants' actions, Plaintiff has suffered such harm as has previously been stated herein.

67. Due to the foregoing violations of 15 U.S.C. §§ 1692e and 1692f, Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount of up to $1000.00 pursuant to § 1692k(a)(2)(A); and reasonable attorneys' fees and costs pursuant to § 1692k(a)(3).

### Count II – FCEUA (PPR4)

68. The preceding paragraphs are incorporated herein by reference.

69. The foregoing acts and omissions of Defendants constituted violations of 73 P.S. § 2270.4(a) of the FCEUA, based on Defendants' violations of 15 U.S.C. §§ 1692e and 1692f of the FDCPA.

70. At all times relevant hereto, HOF was acting as an agent on behalf of PPR4.  HOF's actions therefore constituted PPR4's actions, in addition to PPR4's independent conduct.

71. Violations of the FCEUA in turn constitute per se violations of the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), pursuant to 73 P.S. § 2270.5(a).

72. As a result of these violations, Plaintiff is entitled to up to three times her damages, costs, and attorneys' fees pursuant to 73 P.S. § 201-9.2 of the UTPCPL.

### Count III – LIPL (PPR4)

73. The preceding paragraphs are incorporated herein by reference.

74. By attempting to collect interest of 14.9% on a consumer loan of less than $25,000.00 without a license or other permissible basis, Defendant PPR4 violated Pennsylvania's usury statute, 41 P.S. § 201(a).

75. While Plaintiff did not tender any of the unlawful interest, Plaintiff was forced to retain counsel to defend herself from Defendant PPR4's unlawful demands, incurring substantial costs.

76. As a result of this violation, Plaintiff is entitled to recover damages, reasonable attorneys' fees, and costs of suit pursuant to 41 P.S. §§ 503-504.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff Lisa L. Gary respectfully requests that this Court:

    A.    Declare that the Defendants' actions violated the FDCPA, FCEUA, and LIPL;

    B.    Enter judgment in favor of Plaintiff for actual and statutory damages, costs, and reasonable attorneys' fees as provided by § 1692k of the FDCPA, § 201-9.2 of the UTPCPL, and § 503 of the LIPL; and

    C.    Grant any further relief as deemed just.

## JURY DEMAND

Plaintiff demands a trial by jury.

Respectfully submitted,

LAW OFFICE OF EMILY GOMEZ, LLC

*/s/ Emily S. Gomez-Hayes*
Emily S. Gomez-Hayes, Esq.
PA I.D. #206926
2011 Noble Street, Suite 201
Pittsburgh, PA 15218
Tel: 412-378-5854
Fax: 412-357-1564
esg@egomezlaw.com
*Counsel for Plaintiff Lisa L. Gary*

**CERTIFICATE OF SERVICE**

I hereby certify that on this **6th** day of **March, 2020**, a true and correct copy of the foregoing **Amended Complaint** was served upon all parties of record via the Court's Electronic Filing System.

                                             */s/ Emily S. Gomez-Hayes*
                                             Emily S. Gomez-Hayes, Esq.