IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LISA L. GARY,<br><br>　　　　　　Plaintiff,<br><br>　　　　vs.<br><br>HLADIK ONORATO & FEDERMAN LLP and PARTNERS FOR PAYMENT RELIEF DE IV, LLC,<br><br>　　　　　　Defendants. | CIVIL DIVISION<br><br>CASE NO. 2:19-CV-01288-RJC |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT**

AND NOW comes the Plaintiff, LISA L. GARY, by and through her legal counsel, Emily S. Gomez-Hayes, Esq. and the Law Office of Emily Gomez, LLC, and submits the following Memorandum of Law in Opposition to Defendants' Motion to Dismiss Amended Complaint:

**I.　　MATTER BEFORE THE COURT**

Defendants, Hladik Onorato & Federman LLP ("HOF") and Partners for Payment Relief DE IV, LLC ("PPR4"), have moved to dismiss the Amended Complaint, which Plaintiffs oppose in its entirety. In their 12(b)(6) motion, Defendants claim they are entitled to dismissal of all counts based on, inter alia, (1) a newly-raised and imaginary legal doctrine; (2) a standing argument repeated for the second time, which is inapplicable based on the facts herein; and (3) a newly-raised arbitration argument that Defendants waived a year ago, when they filed a Complaint in Mortgage Foreclosure against Ms. Gary in the underlying matter. As a result, Defendants' arguments fail across the board.

**II.     STATEMENT OF QUESTIONS INVOLVED**

1.      Is federal preemption of Plaintiff's claims pursuant to the Depository Institutions Deregulation and Monetary Control Act of 1980 ("DIDA") unavailable to Defendants due to the fact that they are not state-chartered banks?

Suggested Answer: Yes.

2.      Is Defendant's standing argument inapplicable with respect to non-negotiable instruments such as Plaintiff's Home Equity Line of Credit Agreement?

Suggested Answer: Yes.

3.      Have Defendants waived any arbitration rights they might have once had?

Suggested Answer: Yes.

**III.    RELEVANT FACTS**

On or about June 9, 2000 Plaintiff Lisa Gary, a "consumer" as defined by the FDCPA and FCEUA (Am. Compl. ¶ 1), entered into a Home Equity Line of Credit ("HELOC") Agreement with non-party Irwin Union Bank and Trust Company ("Irwin") providing for the extension of credit in varying draws up to a maximum of $11,000. Am. Compl. ¶ 7-8; Am. Compl. Ex. A.  In so doing, Ms. Gary took on a "debt" as defined by the FDCPA and FCEUA. Am. Compl. ¶ 1.  Ms. Gary did not borrow a fixed amount of money, but acquired a credit line. Am. Compl. ¶ 11-12.  The HELOC also required Ms. Gary to report changes in her employment status, her financial condition, and of any damage that were to occur to her home.  Am. Compl. ¶ 13; Am. Compl. Ex. A.  On September 18, 2009, Irwin failed as a financial institution and entered FDIC receivership.  Am. Compl. ¶ 15.  The same day, Irwin's parent company, Irwin Financial Corporation, filed for bankruptcy in the Southern District of Indiana.  Am. Compl. ¶ 16.  On information and belief, Irwin's assets, including Plaintiff's HELOC, were subsequently

sold off by the FDIC to Indiana-based First Financial Bank, N.A. in September of 2009.  Am. Compl. ¶ 17.  Following the sale, it is unknown what happened to the ownership of Plaintiff's HELOC.  Am. Compl. ¶ 19.

On or about July 21, 2014, Defendant PPR4 was formed in the State of Delaware.  Am. Compl. ¶ 26.  In March 2015, it registered its name in Pennsylvania.  Am. Compl. ¶ 28.  PPR4 is a "debt collector" as defined by the FDCPA and FCEUA.  Am. Compl. ¶ 5, 27.

Defendant PPR4's business model is to purchase delinquent consumer debt (thereby extending credit) and attempt to collect said debt while charging interest at rates to which original lenders were entitled, including rates in excess of 6% simple interest.  Am. Compl. ¶ 27.  However, as a non-bank consumer lender of monies in the amount of $25,000 or less, Defendant PPR4 is required to obtain a license pursuant to the Consumer Discount Company Act ("CDCA"), 7 P.S. § 6201 et seq., to lawfully charge interest in excess of 6% simple interest in Pennsylvania.  Am. Compl. ¶ 40.  PPR4 has never obtained a CDCA license.  Am. Compl. ¶ 41.

In January 2019, Plaintiff received correspondence from one SN Servicing Corporation, which sought information from Plaintiff on behalf of Defendant PPR4.  Am. Compl. ¶ 35.  On or about May 3, 2019, an unknown person or entity recorded a mortgage assignment, purporting to reflect a direct assignment of Plaintiff's HELOC from Irwin to PPR4.  Am. Compl. ¶ 36, Am. Compl. Ex. B.  On information and belief, Defendant PPR4 or its agent obtained a blank and previously-notarized form and filled PPR4's name in, misspelling it.  Am. Compl. ¶ 38, Am. Compl. Ex. B.

The information set forth in the May 3, 2019 assignment constituted false, deceptive, and misleading statements, inasmuch as Irwin had ceased to exist nearly five years before Defendant PPR4 came into being.  Am. Compl. ¶ 37, 45-46.  Such conduct also constituted unfair means in

connection with the collection of a debt, given that Defendant PPR4 thereby intentionally and falsely represented to the general public and to the courts that PPR4 was the direct recipient of an assignment from Irwin that gave it the right to foreclose.  Am. Compl. ¶ 61-62.  In reality, the chain of ownership of Plaintiff's HELOC after First Financial Bank took possession in September 2009 remains unknown.  Am. Compl. ¶ 18-19.

On June 17, 2019 Defendant HOF, a debt collector as defined by the FDCPA (Am. Compl. ¶ 3), filed a Complaint in Mortgage Foreclosure on behalf of Defendant PPR4.  Am. Compl. ¶ 39.  The foreclosure complaint sought, inter alia, interest at a rate of 14.9% for a total amount of $6,164.16, plus continuing interest in the amount of $2.96 per day.  Am. Compl. ¶ 39, Am. Compl. Ex. C.  The complaint also cited the May 3, 2019 assignment as the basis for PPR4's right to foreclose.  Am. Compl. Ex. C, p. 7.  Given both PPR4's failure to obtain a CDCA license when it was required to do so, as well as the blatant falsity of the contents of the May 3, 2019 assignment, Defendants' statements in the Foreclosure Complaint lacked both factual accuracy and a legal basis.  Am. Compl. ¶ 40-43, Am. Compl. Ex. C.

As a direct and proximate result of Defendants' false statements and illegally inflated demands for payment, Plaintiff wasted her time and energy attempting to secure loans for amounts to which Defendants were not entitled.  Am. Compl. ¶ 49.  As a direct and proximate result of their conduct, Plaintiff has suffered damages in the form of anxiety, embarrassment, stress, and lost sleep.  Am. Compl. ¶ 50.

## IV.     STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a claim.  See Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990); Sturm v. Clark, 835 F.2d 1009, 1011 (3d Cir. 1987).  In considering a motion to

dismiss, the court must accept as true all factual allegations of the complaint and draw all reasonable inferences in the light most favorable to the Plaintiff.  <u>Board of Trs. Of Bricklayers and Allied Craftsmen Local 6 of N.J. v. Wettlin Assocs., Inc.</u>, 237 F.3d 270, 272 (3d Cir. 2001).  A court therefore "may dismiss a [claim] only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations." <u>Ramadan v. Chase Manhattan Corp.</u>, 229 F.3d 194, 195-96 (3d Cir. 2000)(citing <u>Alexander v. Whitman</u>, 114 F.3d 1392, 1398 (3d Cir. 1997)).

## VI. LEGAL ARGUMENT

### A. The Depository Institutions Deregulation and Monetary Control Act of 1980 ("DIDA") Does Not Apply to Claims Against Non-Banks

In their Motion to Dismiss the Amended Complaint, Defendants argue for the first time that, despite the fact that neither Defendant is a bank, Plaintiff's claims are preempted by the Depository Institutions Deregulation and Monetary Control Act of 1980 ("DIDA") – a law applicable solely to federally insured state banks, which permits them to export interest rates from other jurisdictions.  <u>See</u> <u>Def. Mot. Dism. Am. Compl.</u>, p. 6.  This argument is without merit.

#### *1. The Strict Language of DIDA Limits Its Application to Federally Insured State-Chartered and Foreign Banks*

As an initial matter, the strict language of the statute itself belies Defendants' ridiculously audacious assertion.  Section 521 of DIDA provides:

> "In order to prevent discrimination against **State-chartered insured depository institutions**, including **insured savings banks**, or **insured branches of foreign banks** with respect to interest rates…such **State bank[s]**…may, notwithstanding any State constitution or statute which is hereby preempted for purposes of this section, take, receive, reserve, and charge on any loan or discount made, or upon any note, bill of exchange, or other evidence of debt, interest at a rate of not more than 1 per centum in excess of the discount rate on ninety-day commercial paper in effect at the Federal Reserve bank in the Federal Reserve district where such **State bank** or such **insured branch of a foreign bank** is located or at the rate

allowed by the laws of the State, territory, or district where the **bank** is located, whichever may be greater."

12 U.S.C. § 1831d(a)(emphasis added).

By its terms, this section solely addresses the rights of federally insured state banks and branches of foreign banks.  Id.  Nowhere is there any mention of an entity other than a federally insured **bank**.  Indeed, the explicitly delineated concern addressed by Section 521 of DIDA is the prevention of discrimination against **state-chartered insured depository institutions**.  Id.  Defendant PPR4 is neither a bank nor a depository institution.  Am. Compl. ¶ 40.  As such, no rights inure to it by virtue of Section 521.

### 2. *Third Circuit Precedent Distinguishes Between Claims Against Banks and Claims Against Non-Banks For Purposes of Federal Preemption*

In accordance with the plain language of DIDA, the Third Circuit has held that Section 521 thereof applies only to state-chartered banks, and not to non-bank purchasers of loans.  In re Community Bank of Northern Virginia, 418 F.3d 277, 296 (3d Cir. 2005).  In the case of In re Community Bank, the Third Circuit rejected the application of DIDA in circumstances where a plaintiff had not asserted claims against any bank.  Id.  Because the complaint stated no claims against a bank, as in the instant matter, federal preemption could not occur.  Commonwealth of Pennsylvania v. Think Fin., Inc., 2016 U.S. Dist. LEXIS 4649, at *40 (E.D.Pa. Jan. 14, 2016)(citing In re Community Bank, 418 F.3d at 296).

The Third Circuit is far from alone in its analysis of the aforementioned language.  In 2015, the Second Circuit ruled that the assignee of a loan originated by a national bank was not entitled to preemption and was consequently subject to state usury law.  Madden v. Midland Funding LLC, 786 F.3d 246, 250-51 (2d Cir. 2015).  In Madden, a non-bank purchased written-off credit card debt from a national bank and then sought to collect at a 27% interest rate.  Id. at

248.  The plaintiff then sued the collector under the FDCPA and state usury law, much like the case herein.  Id. at 248.  The Second Circuit held that the preemption principles of the National Bank Act of 1864 ("NBA") did not apply because "neither defendant is a national bank nor a subsidiary or agent of a national bank, or is otherwise acting on behalf of a national bank, and because application of the state law on which [plaintiff's] claim relies would not significantly interfere with any national bank's ability to exercise its powers under the National Bank Act." Id. at 249.

While Madden involved an interpretation of Section 85 of the NBA, its analysis is germane to interpretations of Section 521 of DIDA because DIDA's language, enacted in 1980, was borrowed verbatim from Section 85 of the 1864 NBA.  When Congress borrows language from one statute and incorporates it into a second statute, the language of the two acts ordinarily should be interpreted in the same way.  In re Community Bank, 418 F.3d at 295-296 (citing Morales v. TransWorld Airlines Inc., 504 U.S. 374, 383-84 (1992); Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 144-45 (1990); Oscar Mayer & Co. v. Evans, 441 U.S. 750, 756 (1979).

Aside from the Second and Third Circuits, courts across the country have recognized that when claims are asserted against non-bank assignees and/or purchasers of bank-originated consumer debt, federal preemption does not follow.  See Meade v. Avant of Colorado LLC, 307 F.Supp.3d 1134, 1144-45 (D. Colo. 2018)(no complete preemption where claims asserted against a non-bank); (Community State Bank v. Knox, 850 F. Supp. 2d 586, 601 (M.D.N.C. 2012)(no federal subject-matter jurisdiction where plaintiff did not bring claims against bank)(aff'd, 523 Fed. Appx. 925, 930 (4th Cir. 2013); Dandy v. Wilmington Fin., Inc., 2010 U.S.Dist LEXIS 151430, at *20 (D.N.M. May 3, 2010)(finding no federal preemption as defendant was not a

bank); W. Virginia v. CashCall, Inc., 605 F.Supp.2d 781, 788 (S.D.W.Va. 2009)(no federal preemption where usury claim was directed against a non-bank); Flowers v. EZPawn Oklahoma, Inc., 307 F.Supp.2d 1191, 1196, 1204 (N.D. Okla. 2004)(no preemption where plaintiff's claims were only brought against non-bank defendants); Colorado v. Ace Cash Express, Inc., 188 F.Supp.2d 1282, 1285 (D. Colo. 2002)(defendant's relationship with a bank does not elevate defendant's status to that of a bank).

      3. *The "Valid-When-Made" Rule is a Fictional Doctrine Designed To Allow Non-Banks to Eviscerate State Usury Law While Remaining Free of State or Federal Regulation*

In an effort to circumvent the plain language of Section 521 of DIDA, Defendants cite to a single Colorado bankruptcy court decision, currently up on appeal before the District Court, which asserts that usury may only be analyzed at the inception of a loan. In re Rent-Rite Superkegs W., Ltd., 603 B.R. 41, 66 (Bankr. D. Colo. 2019). In elucidating this so-called "valid-when-made" rule, the Rent-Rite opinion strings together a number of cases predating the 1864 National Bank Act, selectively edits them, and removes them from their contexts to make them stand for propositions that they never stood for. See Amicus Curiae Brief of Professor Adam J. Levitin in Support of Appellant p. 15-27, Rent-Rite Superkegs W., Ltd. v. World Bus. Lenders LLC, No. 19-CV-01552 (D. Colo. Sept. 19, 2019).[1] The Federal Deposit Insurance Corporation ("FDIC") does the same thing in its Amicus Brief on the Rent-Rite appeal to the District Court[2]. Both the FDIC Amicus Brief and Defendants' Motion are replete with misleading, selectively edited quotes from numerous cases. Id.

By way of example, Defendants cite to Gaither v. Farmers' & Mechanics' Bank of Georgetown, 26 U.S. 37, 43 (1828) for the proposition that "if the note [is] free from usury, in its

---

[1] A true and correct copy of the Levitin Amicus Brief is attached hereto and incorporated herein as Exhibit 1. Plaintiff also adopts the arguments made by Professor Levitin into the case sub judice.
[2] Defendants incorporate the FDIC amicus brief in their Motion to Dismiss. Def. Mot. Dism. Am. Compl. Ex. B.

origin, no subsequent…transactions…can affect it with the taint of usury." <u>Def. Mot. Dism. Am. Compl</u>. p. 9.  Unfortunately for Defendants, the actual <u>Gaither</u> quote is as follows:

> "[T]he rule cannot be doubted, that if the note free from usury, in its origin, ***no subsequent usurious transactions*** respecting it, can affect it with the taint of usury."

<u>Gaither</u>, 26 U.S. at 43 (emphasis added).

<u>Gaither</u> involved a non-usurious note that was pledged by the payee as collateral for an unrelated, usurious loan.  The question before the court therein was how, if at all, the pledging of this non-usurious note in a subsequent usurious transaction affected the nature of the initial note.  <u>Id</u>.  <u>Gaither</u> does not at all address the question herein, which is whether a loan originated by a state bank with a non-usurious interest rate under DIDA may be transformed into a usurious loan by virtue of transference to a non-bank, which is not entitled to the benefits of DIDA.

This so-called "valid-when-made" rule cannot be a longstanding doctrine incorporated into either the 1864 NBA or the 1980 DIDA, as Defendants argue, because prior to the enactment of the NBA state usury laws applied to <u>both</u> state and federal banks.  <u>Miller v. Tiffany</u>, 68 U.S. 298, 308 (1864).  Therefore, it was impossible prior to 1864 for a loan to be non-usurious in the hands of a bank, yet usurious in the hands of a non-bank assignee.  As such, all of the cases that Defendants, the FDIC, and the Rent-Rite court cite prior to 1864 are irrelevant in the case sub judice.

> ### 4. *Federal Preemption is Not an Assignable Right Under a Contract Nor Does Its Unavailability to Non-Bank Assignees Impair the Banking System*

As a corollary argument to "valid-when-made," Defendants also argue that they can circumvent their exclusion from the fruits of DIDA by virtue of basic contract law.  <u>Def. Mot. Dism. Am. Compl</u>. p. 10.  This argument similarly fails.  DIDA preemption is not a contract right that can be freely assigned.  It is not alienable property, but a privilege personal to a bank

that comes as part of a bundle of a detailed regulatory scheme. Amicus Curiae Brief of Professor Adam J. Levitin in Support of Appellant p. 12, Rent-Rite Superkegs W., Ltd. v. World Bus. Lenders LLC, No. 19-CV-01552 (D. Colo. Sept. 19, 2019). In essence, Defendants want to have their cake and eat it too; they neither want the burden of being regulated by the Pennsylvania Department of Banking or by the Office of the Comptroller of the Currency, nor do they want to be subject to state usury law. A regulatory vacuum is exactly what they hope to achieve.

Finally, contrary to Defendants' final claims on this point, denying non-banks such as Defendants the right to DIDA preemption does not impair the ability of banks to sell loans. Def. Mot. Dism. Am. Compl. p. 9. Contrary to Defendants' melodramatic claims, banks have been free and continue to remain free to sell loans to non-banks unable to charge the same levels of interest as themselves ever since the enactment of DIDA in 1980. At most, applying state usury laws to non-bank assignees merely reduces the price at which banks are able to sell certain high-interest loans. Madden, 786 F.3d at 251.

    **B.    Defendant's Standing Argument Is Inapplicable As to Non-Negotiable Instruments Such as Plaintiff's HELOC Agreement**

As in their prior Motion to Dismiss, Defendants again make the erroneous argument that Plaintiff cannot base an FDCPA claim on the false statements contained in PPR4's recorded mortgage assignment, because Plaintiff is not permitted to challenge the mortgage assignment. Def. Mot. Dism. Am. Compl. p. 11. In support thereof, Defendants cite to, inter alia, Nobile v. U.S. Bank N.A., No. 1:15-CV-01102, 2016 U.S. Dist. LEXIS 1110, 2016 WL 639116 (W.D.Pa. Jan. 5, 2016); Souders v. Bank of Am., No. 1:CV-12-1074, 2012 U.S. Dist. LEXIS 186082, 2012 WL 7009007 at *10 (M.D.Pa. Dec. 6, 2012), report and recommendation adopted, No. 1:12-CV-1074, 2013 U.S. Dist. LEXIS 20323, 2013 WL 451863 (M.D. Pa. Feb. 6, 2013). In the Court's prior opinion granting in part and denying in part Defendants' Motion to Dismiss, the Court

viewed Potoczny v. Aurora Loan Servs., LLC, 33 F.Supp.3d 554, 566 n. 18 (E.D.Pa 2014)(citing In re Walker, 466 B.R. 271, 285-86 (Bankr. E.D.Pa. 2012)) and Dixon v. Stern & Eisenberg, PC, No. 5:14-CV-4551, 2015 WL 3833782, at *11 (E.D.Pa. June 22, 2015), aff'd sub nom Dixon v. Stern & Eisenburg, PC, 652 Fed. Appx. 128 (3d Cir. 2016) as persuasive, and as standing for similar propositions.

None of these cases have any application to the case herein due to one simple but fundamental difference: all of the aforementioned cases concern negotiable Promissory Notes, secured by Mortgages. See supra. In contrast, this case involves a non-negotiable Home Equity Line of Credit Agreement, NOT a promissory note. See Am. Compl. Exhibit A.

Section 3104 of Pennsylvania's Uniform Commercial Code defines a negotiable instrument as "an unconditional promise or order to pay a fixed amount of money, with or without interest, if it (1) is payable to bearer or to order at the time it is issued or first comes into possession of a holder; (2) is payable on demand or at a definite time; and (3) does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money." 13 Pa.C.S. § 3104(a); J.P. Morgan Chase Bank, N.A. v. Murray, 63 A.3d 1258, 1265 (Pa. Super. 2013); see also PNC Bank v. Bolus, 665 A.2d 997, 999 (Pa. Super. 1995)(observing that negotiable instruments must be for a fixed amount of money and additional performance requirements destroy negotiability).

Lines of credit, by definition, are not negotiable instruments because they are not unconditional promises or orders to pay a fixed amount of money. See Cadle Co. v. Allshouse, Pa. D&C Cnty. LEXIS 102 at *5-6 (C.P. Westmoreland May 16, 2007). Ms. Gary's HELOC permitted her to borrow up to $11,000, but did not require her to do so. Am. Compl. ¶ 8. Indeed, Ms. Gary drew on the credit line when she was in need of funds at various times, and

later repaid them with interest.  Am. Compl. ¶ 12.  Ms. Gary's HELOC also required her to undertake activities other than the mere payment of money, such as notifying the lender of changes in her employment status, changes in her financial status, and of any damage occurring to the collateral.  Am. Compl., ¶ 13.  These latter requirements also destroy negotiability.  13 Pa.C.S. § 3104(a).

Under ordinary circumstances where a foreclosure plaintiff comes to court with a promissory Note endorsed in blank or to holder, it makes sense that any inquiry into the chain of assignments would be prohibited; it would be irrelevant in light of a duly endorsed Note, which stands on its own as proof that the holder thereof is entitled payment and entitled to foreclose.  Murray, 63 A.3d 1258 at 1266.  Indeed, where a duly endorsed and negotiable Promissory Note exists, payments to the holder will discharge a debtor's liability under the Note, eliminating the danger of double-payment to the wrong person, because the holder of the Note is the person entitled to payment.  See In re Walker, 466 B.R. 271, 285-86 (Bankr. E.D.Pa. 2012).   In the case at bar, however (assuming for the sake of argument that Defendant PPR4 actually is in possession of the original Home Equity Line of Credit Agreement, which has not been shown), such possession does not, by itself, entitle Defendant PPR4 to anything, as the HELOC is not negotiable.  Thus, the danger of Ms. Gary inadvertently paying a person not entitled to payment remains ever-present.  See Am. Compl. ¶ 34 (HELOC changed hands to unknown recipient).

Accordingly, the chain of assignments leading from original lender Irwin up to the purported present holder of the mortgage is highly relevant in the present matter, as proving that chain of title is the only way that PPR4 can demonstrate itself to be a party in interest entitled to recover from Ms. Gary.  Because physical possession of a non-negotiable instrument does not convey ownership, PPR4's only recourse is to the law of secured transactions, where a plaintiff

must plead and prove that, for each transfer in ownership, (1) value was given and (2) the selling party had rights in the collateral.  13 Pa.C.S. § 9203(b).

In the present matter, the statements set forth in the "Assignment of Mortgage" found in Exhibit B to the Amended Complaint assert a transfer in ownership that literally cannot be true.  See Am. Compl. Ex. B.  Defendant PPR4 could not have acquired Ms. Gary's HELOC directly from Irwin Union Bank and Trust Company because PPR4 did not exist in 2009 when Irwin failed and its assets were sold off.  Am. Compl. ¶ 36-37.  As such, the statements therein are false.  Since they were made in conjunction with an attempt to collect a debt from Ms. Gary, they are also actionable pursuant to §§ 1692e and f of the FDCPA.

   C.  **Defendants Have Waived Any Arbitration Rights They May Have Had**

Defendants' final argument in favor of dismissing the Amended Complaint argues that, because the HELOC at issue contains an arbitration clause, the Amended Complaint fails to state a claim upon which relief can be granted.  Def. Mot. Dism. Am. Compl. p. 13.  Defendants' argument, once again, misses the mark.  Arbitration is simply a matter of contract between the parties.  First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943-44 (1995).  Contractual rights may be waived, either by express declaration or by conduct so inconsistent with a purpose to stand on the contract provisions as to leave no opportunity for a reasonable inference to the contrary.  Samuel J. Marranca Gen. Contracting Co. v. Amerimar Cherry Hill Assoc. Ltd., 610 A.2d 499, 501 (Pa. Super. 1992).  In the instant matter, Defendants have waived any rights they might have once had through their litigation conduct in federal and in state court.

As an initial matter, it must be noted that the issue of whether this case should be heard before an arbitrator is not before the Court.  Defendants have not filed a Motion to Compel Arbitration since removing this case to federal court in October 2019.  Instead, Defendants have

filed two Motions to Dismiss plus supporting briefs, in addition to a Motion for an Extension of Time to file the second one.  See Docket Nos. 6, 6-1, 6-2, 7, 8, 16, 16-1, 16-2, 19, 19-1, 19-2, 19-3.  Defendants filed the state-court mortgage foreclosure case, which is currently ongoing, against Ms. Gary in the Allegheny County Court of Common Pleas on June 17, 2019 – nearly a year ago.  See Am. Compl. ¶ 39; see also Am. Compl. Ex. C.

In the foreclosure case, Defendants PPR4 and HOF have since, inter alia, filed a Reply to Ms. Gary's Answer and New Matter; filed a Motion for Judgment on the Pleadings; had the Motion denied by Judge Joseph James; provided inadequate and non-responsive "responses" to Ms. Gary's First Set of Interrogatories, RFPs, and RFAs; and propounded discovery of their own.  Exhibit 2.  Ms. Gary has, in turn, filed an Answer and New Matter; briefed a response to PPR4 and HOF's Motion for Judgment on the Pleadings; propounded a First Set of Interrogatories, RFPs, and RFAs; responded to PPR4 and HOF's RFAs; and commenced drafting a Motion to Compel Discovery and a Motion for Sanctions.  Id.

All of Defendants' actions to date, in both this case and the underlying foreclosure case, have been inconsistent with a contractual right to arbitrate.  See Morales v. Superior Living Prods., LLC, 2009 U.S. Dist. LEXIS 91578, at *17-18 (E.D.Pa. 2009)(rejecting motion to dismiss on grounds of arbitration clause due to Defendants' having filed two motions to dismiss without filing motion to compel).  Indeed, Defendants' act of filing its first Motion to Dismiss herein, by itself, without a mention of arbitration, indicates that any such right has been waived.  Tae In Kim v. Dongbu Tour & Travel Inc., 529 Fed. Appx. 229, 235 (3d Cir. 2013).  Taking all relevant facts together, it is impossible to reach any other conclusion.

In determining whether waiver has occurred, courts in the Third Circuit look to whether the party opposing arbitration has been prejudiced by the actions of the party seeking to arbitrate.

Ehleiter v. Grapetree Shores, Inc., 482 F.3d 207, 222 (3d Cir. 2007)(citing Hoxworth v. Blinder, Robinson & Co., 980 F.2d 912, 925 (3d Cir. 1992)).  To determine whether there would be prejudice to the party being compelled to arbitrate, courts consider a series of six factors:  (1) the timeliness or lack thereof of a motion to arbitrate; (2) the degree to which the party seeking to compel arbitration has contested the merits of its opponent's claims; (3) whether that party has informed its adversary of the intention to seek arbitration even if it has not yet filed a motion to stay the court proceedings; (4) the extent of its non-merits motion practice; (5) its assent to the court's pretrial orders; and (6) the extent to which the parties have engaged in discovery.  Id.

      In the instant matter, Defendants filed a lawsuit against Ms. Gary eleven months ago, in lieu of initiating arbitration.  Am. Compl. ¶ 39.  Although delay alone does not constitute sufficient prejudice to support waiver, there is ample Third Circuit precedent for considering delays of longer than ten months to be a prejudicial factor.  Wash. Cty. Family Entm't LLC v. Roberts, No. 17-CV-892, 2019 U.S. Dist. LEXIS 194838, at *13 (W.D.Pa. Oct. 15, 2019)(citing Ehleiter v. Grapetree Shores, Inc., 482 F.3d 207, 222 (3d Cir. 2007); In re Pharmacy Ben. Managers Antitrust Litig., 700 F.3d 109, 118 (3d Cir. 2012)(finding waiver when ten months passed between filing of complaint and making motion to compel arbitration, especially since movant had not offered any satisfactory explanation for the delay); Gray Holdco Inc. v. Cassady, 654 F.3d 444, 455 (3d Cir. 2011)(ten-month delay in motion to compel arbitration was a factor that weighs in favor of finding waiver); Nino v. Jewelry Exchange Inc., 609 F.3d 191, 210 (3d Cir. 2010)(fifteen-month delay in filing motion to enforce arbitration agreement without convincing explanation weighs heavily in favor of a finding of waiver)), report and recommendation adopted, No. 17-CV-892, 2019 U.S. Dist. LEXIS 1918813 (W.D.Pa. Nov. 5, 2019).

Turning to the second of the Hoxworth factors, Defendants have mightily contested the merits of Ms. Gary's arguments.  In the present case, Defendants have already filed two Motions to Dismiss, and without a whisper of a Motion to Compel Arbitration.  In the foreclosure case, Defendants have replied to Ms. Gary's New Matter and filed an unsuccessful Motion for Judgment on the Pleadings.  Exhibit 2.   Turning to the third Hoxworth factor, at no point during either the foreclosure case or the present FDCPA case have Defendants indicated their intention to seek arbitration.  The fourth and fifth Hoxworth factors, non-merits motion practice and assent to pre-trial orders, largely do not apply as the only other motions to have been filed have been motions for extensions of time.  Defendants have, however, been agreeable to these.  However, with regard to the sixth Hoxworth factor, both parties have already engaged in dueling sets of written discovery.

Where a party delays demanding arbitration and instead engages in litigation practice in the meantime, prejudice results to the party later opposing arbitration because of the ongoing costs inherent to litigation.  Ehleiter, 482 F.3d at 225.  Even if the opposing party's substantive legal position has not been harmed, that party is nonetheless prejudiced due to the costs she has incurred in the meantime, and the likelihood that she will have to duplicate her efforts in another forum.  Id.

In the present matter, Ms. Gary has already incurred the expense of litigating with Defendants PPR4 and HOF in state and federal court for nearly a year without so much as a word spoken concerning arbitration.  As a woman of modest means, these costs have been substantial.  If this case were to be forced into arbitration, she would be profoundly prejudiced due to the additional expenses associated with that forum and it is unclear that she would be able to

proceed.  As such, she has been significantly prejudiced and Defendants' Motion should be denied on this basis.

## CONCLUSION

WHEREFORE, for the reasons stated herein, Plaintiff Lisa L. Gary respectfully requests that this Court deny Defendants' Motion to Dismiss Amended Complaint in its entirety.

Respectfully submitted,

LAW OFFICE OF EMILY GOMEZ, LLC

*/s/ Emily S. Gomez-Hayes*
Emily S. Gomez-Hayes, Esq.
PA I.D. #206926
2011 Noble Street, Suite 201
Pittsburgh, PA 15219
Tel: 412-378-5854
Fax: 412-357-1564
Email: esg@egomezlaw.com
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 11**th** day of **May, 2020**, a true and correct copy of the foregoing **Memorandum of Law in Opposition to Defendants' Motion to Dismiss Amended Complaint** was served upon all parties of record via the Court's Electronic Filing System.

/s/ *Emily S. Gomez-Hayes*
Emily S. Gomez-Hayes, Esq.