IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LISA L. GARY, | ) |
| | ) 2:19-cv-01288-RJC |
| Plaintiff, | ) |
| | ) |
| vs. | ) Judge Robert J. Colville |
| | ) |
| HLADIK ONORATO & FEDERMAN, LLP | ) |
| and PARTNERS FOR PAYMENT RELIEF | ) |
| DE VII, LLC, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

Robert J. Colville, United States District Judge

Before the Court is the Motion to Dismiss Amended Complaint (ECF No. 19) filed by Defendants Hladik Onorato & Federman, LLP ("HOF") and Partners for Payment Relief De VII, LLC ("PPR4"), (collectively, "Defendants"). Defendants seek dismissal of the Amended Complaint (ECF No. 15) filed by Plaintiff Lisa L. Gary ("Gary") in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants' Motion has been fully briefed, and is ripe for disposition.

I. **Factual Background & Procedural History**

In its February 21, 2020 Memorandum Opinion (ECF No. 13), the Court summarized the relevant facts asserted in Gary's original Complaint (ECF No. 1) as follows:

> On or about June 9, 2000, Gary executed a Home Equity Line of Credit Agreement ("HELOC") with Irwin Union Bank and Trust Company ("Irwin"), an Indiana bank insured by the Federal Deposit Insurance Corporation ("FDIC"). The HELOC authorized Gary to borrow up to $11,000.00 with a variable interest rate, and the balance was secured by a third-position lien, i.e. a mortgage, on Gary's home. This mortgage is recorded in Book 19908, Page 184, Instrument No. 104784 in the Office of the Recorder of Deeds of Allegheny County, Pennsylvania.

1

>On September 18, 2009, Irwin was closed by the Indiana Department of Financial Institutions and entered FDIC receivership. Irwin Financial Corporation, Irwin's parent company, filed for Chapter 7 bankruptcy the same day. Gary avers that the FDIC sold Irwin's assets, including her HELOC, to another Indiana bank: First Financial Bank, N.A. following Irwin's 2009 closure. Gary further avers that she does not know what happened to the ownership status of the HELOC following the sale of Irwin's assets to First Financial Bank, N.A. Gary stopped making HELOC payments in 2013 due to difficult financial circumstances.
>
>In December 2017, Real Time Resolutions, Inc. ("RealTime") contacted Gary to request HELOC payments. RealTime did not disclose, and Gary did not ask, whether RealTime had purchased Gary's HELOC, or whether it was merely a servicer of the HELOC on another owner's behalf. Gary resumed making HELOC payments following this communication, and, because she was unable to work at the time due to illness, borrowed money to make payments to RealTime over the next several months. In Fall 2018, RealTime terminated its communication with Gary. Gary believes that this occurred because the ownership of her HELOC had once again changed hands.
>
>In January 2019, SN Servicing Corporation contacted Gary's adult daughter on behalf of PPR4 and requested information regarding Gary's debt. On May 3, 2019, an unknown person or entity recorded a mortgage assignment purporting to transfer ownership of the HELOC from Irwin to PPR4. PPR4 was formed in Delaware on July 21, 2014. PPR4 was founded to collect delinquent consumer mortgage debt. Gary asserts that PPR4, to date, has never obtained a license pursuant to the CDCA.[1] Gary further asserts that, at all times material to Gary's claims, HOF acted as an agent on behalf of PPR4. On June 17, 2019, HOF, on behalf of PPR4, filed a Complaint in Mortgage Foreclosure in the Allegheny County Court of Common Pleas against Gary seeking to recover a total of $15,387.37, i.e. the outstanding principal, interest at a rate of 14.9%, and late charges due on the HELOC at that time.

Mem. Opin. 2-4, ECF No. 13 (citations to Gary's original Complaint omitted). This summary is consistent with the allegations set forth in the Amended Complaint, which sets forth the following additional allegations relevant for purposes of this Court's consideration of the Defendants' present Motion to Dismiss:

---

[1] The CDCA requires lenders of monies in the amount of $25,000.00 or less to obtain a license before they may charge "interest, discount, bonus, fees, fines, commissions, charges, or other considerations which aggregate in excess of the interest that the lender would otherwise be permitted by law to charge if not licensed." 7 P.S. § 6203(A). LIPL Section 201 states that the maximum lawful interest rate for a loan of less than $50,000.00 is six percent. 41 P.S. § 201(a).

Upon entering into the HELOC, Gary did not borrow $11,000.00, or any other fixed amount.  Am. Compl. ¶ 11, ECF No. 15.  Rather, Gary opened a credit line and took "draws" on the HELOC when she found herself in need of funds, later repaying the draws with interest.  *Id.* at ¶ 12.  "In entering the HELOC, Ms. Gary was required to notify the lender of changes in her employment status, changes in her financial condition, and of any damage that were to occur to the collateral."  *Id.* at ¶ 13.[2]  Gary does not know the balance of the HELOC at the time it was sold to First Financial Bank, N.A. following Irwin's 2009 closure.  *Id.* at ¶ 18.

This matter was removed from the Court of Common Pleas of Allegheny County, Pennsylvania to this Court on the basis of federal question jurisdiction on October 8, 2019. 28 U.S.C. § 1441; 28 U.S.C. § 1331; 28 U.S.C. § 1367.  Jurisdiction is proper here under the Fair Debt Collection Practices Act because this action was filed within one year of when the alleged actionable conduct occurred.  *See generally* 15 U.S.C. § 1692k(d) ("An action to enforce any liability created by this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from the date on which the violation occurs.").  Gary's original Complaint asserted violations of: (1) the Fair Debt Collection Practices Act ("FDCPA") (15 U.S.C. §§ 1692 et seq.); (2) the Pennsylvania Consumer Discount Company Act ("CDCA") (7 P.S. 6201 et seq.); (3) the Pennsylvania Fair Credit Extension Uniformity Act ("FCEUA") (73 P.S. §§ 2270.1 et seq.); (4) the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") (73 P.S. § 201-1); and (5) the Pennsylvania Loan Interest Protection Law ("LIPL") (41 P.S. § 101 et seq.),

---

[2] While Gary cites to an "Exhibit A" at ¶ 13 of her Amended Complaint, there are no exhibits attached to the Amended Complaint.  The Court again notes that the HELOC Agreement attached as Exhibit A to Gary's original Complaint is not legible, and further notes that the copy of the HELOC attached as Exhibit C to Defendants' Motion to Dismiss Amended Complaint is also not legible.

and sought relief under the FDCPA (Count I), the FCEUA and the UTPCPL (Count II), and the LIPL (Count III).

On February 21, 2020, this Court entered a Memorandum Opinion and Order of Court (ECF No. 14) granting in part and denying in part Defendants' Motion to Dismiss (ECF No. 6) Gary's original Complaint.  For the reasons set forth in the February 21, 2020 Memorandum Opinion, the Court denied the Motion as to Counts I and II of Gary's original Complaint and granted the Motion as to Count III, but afforded Gary leave to file an amended complaint.  Order 1, ECF No. 14.  Gary filed her Amended Complaint on March 6, 2020, again asserting violations of the FDCPA, the CDCA, the FCEUA, the UTPCPL, and the LIPL, and again seeking relief under the FDCPA as to HOF and PPR4 (Count I), the FCEUA and the UTPCPL as to PPR4 (Count II), and the LIPL as to PPR4 (Count III).  Defendants filed their Motion to Dismiss Amended Complaint, along with a Brief in Support (ECF No. 22), on March 27, 2020.  Gary filed a Brief in Opposition (ECF No. 28) on May 11, 2020.  Defendants filed a Reply Brief (ECF No. 33) on June 2, 2020, Gary filed a Surreply Brief (ECF No. 38) on July 3, 2020, and Defendants filed an unsolicited Supplemental Reply Brief (ECF No. 39) on September 29, 2020.

**II.     Legal Standard**

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint.  *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  In deciding a motion to dismiss, the court is not opining on whether the plaintiff will likely prevail on the merits; rather, when considering a motion to dismiss, the court accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff.  *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).  While a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, a complaint must provide

more than labels and conclusions.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A "formulaic recitation of the elements of a cause of action will not do."  *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  The Supreme Court of the United States has explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.*  (quoting *Twombly*, 550 U.S. at 556) (internal citations omitted).

The United States Court of Appeals for the Third Circuit instructs that "a court reviewing the sufficiency of a complaint must take three steps."  *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).  The court explained:

> First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675.  Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."  *Id.* at 679; *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth."  Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Iqbal*, 556 U.S. at 679.

*Connelly*, 809 F.3d at 787.  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679 (internal citations omitted).

5

In addition to reviewing the facts contained in the complaint, a court may consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994). When a document integral to or relied upon in the complaint is included, the court may also consider that document. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

Although a district court is not obligated to permit leave to amend before dismissing a complaint in a non-civil rights case, *Wolfington v. Reconstructive Orthopaedic Assocs. II P.C.*, 935 F.3d 187, 210 (3d Cir. 2019), courts generally grant leave to amend unless amendment of the complaint would be inequitable or futile. *See, e.g., Bachtell v. Gen. Mills, Inc.*, 422 F. Supp. 3d 900, 915 (M.D. Pa. Oct. 1, 2019) (citing *Phillips v. Allegheny Cty.*, 515 F.3d 224, 245 (3d Cir. 2008)).

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  The United States Court of Appeals for the Third Circuit has explained:

> Pursuant to Rule 9(b), a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the "precise misconduct with which [it is] charged." *Lum v. Bank of America*, 361 F.3d 217, 223–224 (3d Cir.2004).  To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation.

*Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007).

**III.   Discussion**

Defendants assert that each of the claims set forth in Gary's Amended Complaint should be dismissed with prejudice because they are barred by the Depository Institutions Deregulation and Monetary Control Act of 1980 ("DIDA") and the "valid-when-made rule."  Br. in Supp. 6-11,

6

ECF No. 22.  Defendants further argue that Gary's FDCPA claims should be dismissed because Gary lacks standing to challenge the May 3, 2019 assignment of mortgage between Irwin and PPR4.  *Id.* at 11-13.  Defendants also assert that the Amended Complaint should be dismissed because the HELOC contains a mandatory arbitration agreement.  *Id.* at 13.

### A. Arguments That Were Not Raised in Defendants' First Motion to Dismiss

Initially, the Court finds that Defendants' arguments respecting DIDA, preemption, the valid-when-made rule, and mandatory arbitration were raised for the first time in Defendants' Motion to Dismiss Amended Complaint, and clearly could have been raised at the time that Defendants filed their initial Motion to Dismiss with respect to Gary's original Complaint.  Accordingly, the Court finds that these arguments violate Rule 12(g)(2), which places restrictions on the filing of successive motions to dismiss.

Rule 12(g)(2) provides that, "[e]xcept as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion."[3]  Fed. R. Civ. P. 12(g)(2).  The United States Court of Appeals for the Third Circuit has explained that "[t]his 'consolidation rule' is intended 'to eliminate unnecessary delay at the pleading stage' by encouraging 'the presentation of an omnibus pre-answer motion in which the defendant advances every available Rule 12 defense' simultaneously rather than 'interposing these defenses and objections in piecemeal fashion.'"  *Leyse v. Bank of Am. Nat. Ass'n*, 804 F.3d 316, 320 (3d Cir. 2015) (quoting Charles Alan Wright & Arthur R. Miller, 5C Fed. Prac. & Proc. Civ. § 1384 (3d ed.2014)).  "The procedural bar of Rule 12(g)(2) . . . covers all motions to dismiss for failure to

---

[3] The Rule 12(h)(3) exception exempts only motions to dismiss for lack of subject-matter jurisdiction.  *Leyse v. Bank of Am. Nat. Ass'n*, 804 F.3d 316, 320 (3d Cir. 2015).  Under the Rule 12(h)(2) exception, "a successive motion to dismiss for '[f]ailure to state a claim ... may be raised (A) in any pleading allowed or ordered under Rule 7(a); (B) by a motion under Rule 12(c); or (C) at trial.'"  *Id.* (quoting Fed. R. Civ. P. 12(h)(2)).

7

state a claim, regardless of the grounds asserted." *Leyse*, 804 F.3d at 321.  Further, "[t]he filing of an amended complaint will not revive the right to present by motion defenses that were available but were not asserted in timely fashion prior to the amendment of the pleading; conversely, a Rule 12 defense that becomes available because of new matter in the amended complaint may be asserted by motion." 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1388 (3d ed.) (footnotes omitted).

Both of Defendants' Motions to Dismiss were brought under Rule 12(b)(6), and each asserted that Gary failed to state a claim upon which relief may be granted.  Accordingly, Defendants' Motion to Dismiss the Amended Complaint clearly does not qualify for either of the exceptions to Rule 12(g)(2).  Defendants' arguments respecting DIDA and the valid-when-made rule, as well their argument respecting mandatory arbitration, in no way rely on the Amended Complaint's new allegations, which set forth facts in support of Gary's assertion that the HELOC is not a negotiable instrument.  Rather, they constitute arguments that could, and should, have been brought at the time that Defendants sought dismissal of Gary's original Complaint.  *See Sourovelis v. City of Philadelphia*, 246 F. Supp. 3d 1058, 1077–78 (E.D. Pa. 2017) ("Instead, the City Defendants' arguments in the instant motion relate solely to allegations that appeared in the First Amended Complaint.  The City Defendants therefore could have (and should have) made those arguments in their previous motion to dismiss.").

Gary's allegations supporting her assertion that Defendants violated the CDCA remain unchanged in the Amended Complaint, likely because this Court found the arguments raised by Defendants in their first Motion to Dismiss respecting the same to be without merit.  The Court notes that each source cited to or incorporated by reference by Defendants in support of their arguments respecting DIDA, preemption, the valid-when-made rule, and mandatory arbitration

was available to Defendants at the time that Defendants filed their October 29, 2019 Motion to Dismiss.[4] This is especially true with respect to Defendants' argument that this case should be dismissed on the basis of a mandatory arbitration agreement contained in the June 9, 2000 HELOC.[5] There is no basis for this Court to conclude that Defendants could not have raised the above arguments at the time that they filed their Motion to Dismiss Gary's original Complaint, and the Court finds that it cannot, and should not, consider these arguments at this time pursuant to Fed. R. Civ. P. 12(g)(2).[6]

While the Court acknowledges that these arguments may subsequently be raised, if appropriate, following the close of the pleadings in this matter, the United States Court of Appeals for the Third Circuit has explained:

> We emphasize that district courts should enforce Rule 12(g)(2) even if their failure to do so is not a ground for reversal. Although some courts and commentators believe that allowing successive pre-answer motions to dismiss avoids delay, this seems to us like short-term thinking. In any given case, requiring a defendant to file an answer and then a Rule 12(c) motion will take more time than allowing it to file a successive pre-answer Rule 12(b)(6) motion. But over the long term, stringent application of Rule 12(g)(2) may motivate defendants to consolidate their arguments in a single pre-answer motion, especially if they know that the district court will not stay discovery while a post-answer Rule 12(c) motion is pending. Granted, the logic of deterrence could also support enforcing Rule 12(g)(2) on appeal. The length of the appellate process, however, increases the costs of enforcement and suggests that the balance should be struck differently.

---

[4] The Court notes that the FDIC Amicus Brief upon which Defendants rely heavily was filed in the United States District Court for the District of Colorado on September 10, 2019, Br. in Supp. Ex. B, ECF No. 22, i.e. more than one month before the filing of Defendants' Motion to Dismiss, and more than five months before this Court issued its ruling on the Motion to Dismiss.

[5] Defendants have not filed a motion to compel arbitration, and seek dismissal on the basis of an arbitration agreement. To the extent the same is properly raised in a motion to dismiss, there is simply no reason to conclude that this argument could not have been raised in the October 29, 2019 Motion to Dismiss.

[6] The Court further notes that Defendants seemingly raise several new arguments in support of dismissal for the first time in their Reply to Gary's Response to their Motion to Dismiss Amended Complaint. The Court further finds that, pursuant to Rule 12(g)(2), consideration of such arguments is not warranted at this time.

*Leyse*, 804 F.3d at 322 n.5.  As such, the Court declines to consider any of the arguments set forth in Defendants' Motion to Dismiss Amended Complaint discussed above, which this Court finds violate Rule 12(g)(2)'s restrictions on successive motions to dismiss.

## B. Gary's FDCPA Claim (Count I) Based Upon Alleged Misrepresentations Respecting the Ownership of the HELOC

Because Gary has set forth new allegations in support of her claims for FDCPA violations on the basis of alleged misrepresentations respecting the ownership of the HELOC, and further because Defendants raised arguments in their Motion to Dismiss Gary's original Complaint respecting Gary's standing to challenge the assignment of the mortgage from Irwin to PPR4, the Court will now consider Defendants' argument that Gary's FDCPA claim should be dismissed because Gary lacks standing to challenge this assignment of mortgage.

Count I of Gary's Complaint seeks relief under the FDCPA.  The purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e).  Section 1692e of the FDCPA prohibits any "false, deceptive, or misleading representation or means in connection with the collection of any debt."  Prohibited actions include:

(2) The false representation of--

    (A) the character, amount, or legal status of any debt; or

    . . . .

 (5) The threat to take any action that cannot legally be taken or that is not intended
to be taken.

    . . . .

> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. § 1692e.  Section 1692f of the FDCPA prohibits the use of "unfair or unconscionable means to collect or attempt to collect any debt."  Such prohibited conduct includes but is not limited to "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."  15 U.S.C. § 1692f.

In order to state a claim for a violation of the FDCPA, a plaintiff must set forth allegations which establish that a debt collector utilized one or more prohibited practices to collect a debt from a consumer.  *Piper v. Portnoff Law Assocs., Ltd.*, 396 F.3d 227, 232 (3d Cir. 2005).  In the present case, Gary asserts that Defendants utilized prohibited practices in order to collect a debt from Gary by, inter alia, knowingly misrepresenting that PPR4 is the owner of the HELOC by way of an assignment of mortgage from Irwin to PPR4.  Defendants argue that Gary lacks standing to challenge the May 3, 2019 assignment of mortgage between Irwin and PPR4, and that Gary's claim asserting that this assignment was fraudulent fails as a matter of law.  As explained in this Court's February 21, 2020 Memorandum Opinion:

> There are three requirements for standing under Article III of the United States Constitution: 1) injury-in-fact, 2) causation, and 3) redressability.  *See generally*, U.S. CONST. art. III, § 2; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).
>
> In the instant case, Gary asserts that Defendants violated the FDCPA by recording a false mortgage assignment purportedly transferring ownership of the HELOC from Irwin to PPR4. Gary asserts that PPR4, or an agent on PPR4's behalf, knowingly and intentionally obtained a blank, previously notarized assignment form and entered PPR4's name onto a blank space to create an assignment from Irwin to PPR4. Gary avers that such an assignment could not have occurred because Irwin had shut down its operations five years prior to PPR4's formation.  Gary further alleges that Defendants utilized this purportedly fraudulent assignment in connection with the collection of a debt from Gary, namely the filing of a mortgage

11

>foreclosure action against Gary in the Court of Common Pleas of Allegheny County (the "[F]oreclosure [A]ction"). Gary avers that such actions constitute violations of both § 1692e and § 1692f of the FDCPA.

Mem. Opin. 7-8, ECF No. 13 (citations to Gary's original Complaint omitted) (footnote omitted).

Although the Court did not dismiss Count I of Gary's original Complaint, it did state that "Gary would not be able to maintain a claim before this Court for a violation of the FDCPA if Gary's Complaint relied only on her allegations involving the allegedly fraudulent assignment of mortgage." *Id.* at 11. In so stating, the Court rejected Gary's argument that the HELOC is a non-negotiable instrument, as well as her argument that the HELOC's chain of ownership is at issue. The Court found that, as pled, the HELOC was a negotiable instrument, and held that "Gary's FDCPA claim asserting that Defendants knowingly misrepresented that PPR4 was the owner of the HELOC, and thus entitled to foreclose on the HELOC, by way of an assignment of mortgage from Irwin to PPR4 fails to set forth an injury-in-fact." *Id.* at 10-11.

In so holding, the Court cited to case law which held that notes securing a mortgage were negotiable instruments, and thus enforceable by the holder of the note even where the chain of possession was in question. The Court primarily relied on the United States District Court for the Eastern District of Pennsylvania's decision in *Potoczny v. Aurora Loan Servs., LLC*, 33 F. Supp. 3d 554 (E.D. Pa. 2014), which explained:

>Although the Pennsylvania Supreme Court has not yet addressed this issue head on, both the Pennsylvania Superior Court and the Bankruptcy Court for the Eastern District of Pennsylvania have held that a note securing a mortgage is a negotiable instrument under Pennsylvania's Uniform Commercial Code ("PUCC"), enforceable by its possessor, regardless of doubts about the chain of possession or the status of the possessor as a "holder" of the note under the UCC.

*Potoczny v. Aurora Loan Servs., LLC*, 33 F. Supp. 3d 554, 565 (E.D. Pa. 2014), *aff'd sub nom. Potoczny v. Aurora Loan Servs.*, 636 F. App'x 115 (3d Cir. 2015) (citing *J.P. Morgan Chase Bank v. Murray*, 63 A.3d 1258, 1263–66 (Pa.Super.Ct.2013); *In re Walker*, 466 B.R. 271, 282, 285–86

(Bankr.E.D.Pa.2012)); *see also In re Walker*, 466 B.R. at 286 ("Here, the element of 'injury in fact' is lacking because the Note is a negotiable instrument and BNYM is the holder. As a result, even if the assignment to BNYM were defective and the original assignor retains ownership rights in the Note, any payments the Debtor makes to BNYM will discharge her liability under the Note."). This Court held that Gary had "not explained how the mortgage associated with the HELOC is in some way distinguishable from the mortgages discussed in *Potoczny* and [*Dixon v. Stern & Eisenberg, PC,* No. 5:14-CV-4551, 2015 WL 3833782, at *10 (E.D. Pa. June 22, 2015), aff'd sub nom. Dixon v. Stern & Eisenburg, PC*, 652 F. App'x 128 (3d Cir. 2016)]," and thus found that Gary did not have standing to bring an FDCPA claim based upon Defendants' alleged misrepresentations that PPR4 was the owner of the HELOC, and thus entitled to foreclose on the HELOC by way of the Foreclosure Action, because payment to the holder of the mortgage and HELOC at issue would discharge her liability under the HELOC.

In opposing Defendants' Motion to Dismiss Amended Complaint, Gary correctly asserts that the cases relied upon by the Court in its February 21, 2020 Memorandum Opinion involved *negotiable* notes secured by mortgages, which are enforceable by the holder regardless of issues in the chain of possession. Br. in Opp'n 11, ECF No. 28. Gary asserts that the Amended Complaint sets forth facts sufficient to establish that the HELOC is a non-negotiable instrument, and that payment to the holder of the mortgage and HELOC at issue would thus not necessarily discharge her liability under the HELOC.

The negotiability of the HELOC is a key factor in determining whether payment to the holder of the mortgage and HELOC would discharge Gary's liability under the HELOC, and thus whether the Foreclosure Action will subject Gary to the potential of being required to pay the HELOC more than once, i.e. whether she has asserted an injury-in-fact with respect to Defendants'

13

alleged misrepresentations in the Foreclosure Action. *See JP Morgan Chase Bank, N.A. v. Murray*, 2013 PA Super 55, 63 A.3d 1258, 1263 (2013) ("'When suit is brought against the defendant by a stranger to his contract, he is entitled to proof that the plaintiff is the owner of the claim against him. This protection must be afforded the defendant. Otherwise, the defendant might find himself subjected to the same liability to the original owner of the cause of action, in the event that there was no actual assignment.' . . . That being said, if Pennsylvania's Uniform Commercial Code ("PUCC"), 13 Pa.C.S. §§ 1101, et seq., governs the Note as a 'negotiable instrument,' *Id.* § 3104, then there is no risk of a debtor twice being held to account for a single debt . . . Pursuant to the PUCC, a debtor who satisfies his obligations under a negotiable instrument cannot be required to do so again, even if the recipient of the debtor's performance is not the holder of the note in question. *Id.* § 3602(a)." (quoting *Produce Factors Corp. v. Brown*, 197 Pa.Super. 626, 179 A.2d 919 (1962))).

The Court finds that Gary's Amended Complaint sets forth facts which establish that the HELOC is a non-negotiable instrument, thus placing its chain of assignments at issue. A negotiable instrument is a written instrument that is an unconditional promise or order to pay a fixed amount of money, with or without interest, if it:

> (1) is payable to bearer or to order at the time it is issued or first comes into possession of a holder;
>
> (2) is payable on demand or at a definite time; and
>
> (3) does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain:
>
>> (i) an undertaking or power to give, maintain or protect collateral to secure payment;
>>
>> (ii) an authorization or power to the holder to confess judgment or realize on or dispose of collateral; or

14

> (iii) a waiver of the benefit of any law intended for the advantage or protection of an obligor.

13 Pa.C.S. § 3104(a). Courts have found that promissory notes supporting a line of credit are not negotiable instruments because they do not contain an unconditional promise to pay a fixed amount of money. *See Cadle Co. v. Allshouse*, No. 2023 of 2006, 2007 WL 5472749 (Pa. Ct. Com. Pl. 2006), *aff'd*, 959 A.2d 455 (Pa. Super. 2008) ("To qualify as a negotiable instrument, an agreement must be for a 'fixed amount.' *PNC Bank v. Bolus*, 655 A.2d 997 (Pa. Super. 1995). In this case however, the Agreement is not for a fixed amount, but rather it is a line of credit that permitted Allshouse to draw advances using special checks provided by the Bank. The Agreement does not contain an unconditional promise to pay a sum certain in money upon demand. Although the Agreement does provide for a borrowing limit, this does not, in the Court's view, transform the Agreement into a negotiable instrument."); *Fed. Deposit Ins. Corp. v. Musser*, No. CV 12-7231, 2017 WL 878208, at *8 (E.D. Pa. Mar. 6, 2017) ("The promissory note in this case presents the same problem. It supports a revolving line of credit, with a limit of $3 million but no fixed amount. Under Pennsylvania law, the note fails to satisfy the definition of negotiable instrument under § 3104.").

In the present case, Gary alleges that HELOC authorized Gary to borrow *up to* $11,000.00 with a variable interest rate. Am. Compl. ¶ 8, ECF No. 15. Gary further alleges that, upon entering into the HELOC, she did not borrow $11,000.00, or any other fixed amount. *Id.* ¶ 11. Rather, Gary asserts that she opened a credit line and took "draws" on the HELOC when she found herself in need of funds, later repaying the draws with interest. *Id.* at ¶ 12. In light of the above, the Court finds that Gary has sufficiently alleged that the HELOC is a non-negotiable line of credit as opposed to a negotiable instrument. Under the case law discussed above, Gary's payment of

HELOC charges to Defendants would not necessarily discharge her obligations under the HELOC. Accordingly, Gary has standing to challenge, by way of her FDCPA claim, the alleged misrepresentations set forth by Defendants in the Foreclosure Action respecting their right to foreclose on the HELOC pursuant to an allegedly fraudulent assignment of mortgage.

Gary asserts that Defendants have misrepresented in the Foreclosure Action that PPR4 was the owner of the HELOC, and thus entitled to foreclose on the HELOC, by way of an allegedly fraudulent assignment of mortgage from Irwin to PPR4.  Am. Compl. ¶ 44, ECF No. 15.  15 U.S.C. § 1692e prohibits any "false, deceptive, or misleading representation or means in connection with the collection of any debt."  The Third Circuit has explained:

> We have already noted that, if a communication meets the Act's definition of an effort by a "debt collector" to collect a "debt" from a "consumer," it is not relevant that it came in the context of litigation. *Heintz v. Jenkins*, 514 U.S. 291, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995).  The same is true where the communication comes in the context of *in rem* litigation.

*Piper*, 396 F.3d at 234.  When faced with a similar factual situation involving a plaintiff asserting an FDCPA claim on the basis that a defendant had filed a foreclosure action which relied on invalid mortgage assignments, the United States District Court for the Eastern District of Pennsylvania held:

> The initial inquiry involves whether or not the two recorded assignments upon which Defendants relied in launching their foreclosure action were, in fact, invalidated by the undisclosed, unrecorded assignments that they had in their possession.  For the purposes of this motion, the fact that Plaintiff pleaded that they had been invalidated is enough, though evidence will need to be provided later.  If, however, the recorded assignments remained valid, then clearly no FDCPA claim may lie.

*Hoffman v. Wells Fargo Bank, N.A.*, No. 13-CV-5700, 2014 WL 6822359, at *2 (E.D. Pa. Dec. 4, 2014).  The *Hoffman* court, in finding that the plaintiff had asserted a material misrepresentation, explained that "the misrepresentation made by Defendants in the case before this Court affected

16

whether a large sum of money in the form of a mortgage was in fact owed to the party bringing the foreclosure action." *Id.* at *4. Similarly, Gary alleges that Defendants brought the Foreclosure Action to collect a debt from Gary relying on an allegedly fraudulent mortgage assignment, thus misrepresenting that the sum of money sought was in fact owed to Defendants. For the reasons discussed above, the Court finds that Gary has sufficiently alleged an FDCPA claim based upon misrepresentations respecting the ownership of the HELOC.

## IV.     Conclusion

The above-discussed arguments are the only bases set forth by Defendants in support of dismissal in their Motion to Dismiss Amended Complaint (ECF No. 19). For the reasons discussed above, the Court will deny the Motion. An appropriate Order of Court follows.

BY THE COURT:

s/*Robert J. Colville*_____
Robert J. Colville
United States District Judge

DATED: December 22, 2020

cc/ecf: All counsel of record